# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DEVI KHODAY and DANISE TOWNSEND, individually and on behalf of the class they represent, | NO.  0:11-cv-00180 (JRT-FLN)<br><br>CLASS ACTION<br><br>**AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>DEMAND FOR JURY TRIAL |
| Plaintiffs, | |
| v. | |
| SYMANTEC CORP. and DIGITAL RIVER, INC., | |
| Defendants. | |

1.      Plaintiffs Devi Khoday and Danise Townsend, individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs bring this action for damages against Defendants Symantec Corporation and Digital River, Inc.

## NATURE OF ACTION

2.      Symantec Incorporated ("Symantec") is among the world's largest dedicated security technology companies.  According to the company's 2010 Form 10-K, Symantec "is a global provider of security, storage and systems management solutions that help businesses and consumers secure and manage their information. We provide consumers with software and services that protect, manage and control information risks related to security, data protection, storage, compliance, and systems management." Symantec sells its security software products and services (the "software" or "Norton Products") to individuals on its websites,

www.symantec.com and www.norton.com.  Symantec owns the Norton franchise and operates

www.norton.com.  Symantec also owns and operates Symantec.com.

    3.      Prior to July 1, 2010, Symantec employed Digital River, Inc. ("Digital River") to

provide e-commerce services, including administration of many aspects of Symantec's internet

sales.  According to a press release on Digital River's website,

> Digital River, Inc., a global leader in e-commerce outsourcing,
> builds and manages online businesses for more than 40,000
> software publishers, manufacturers, distributors and online
> retailers. Its multi-channel e-commerce solution, which supports
> both direct and indirect sales, is designed to help companies of all
> sizes maximize online revenues as well as reduce the costs and
> risks of running an e-commerce operation. The company's
> comprehensive platform offers site development and hosting, order
> management, fraud prevention, export controls, tax management,
> physical and digital product fulfillment, multi-lingual consumer
> service, advanced reporting and strategic marketing services.

    4.      Up until shortly after the filing of the original complaint in this action, when

consumers selected Norton Products for purchase, their online shopping cart automatically

included "Norton Download Insurance" or "Extended Download Service," referred to herein as

"Download Insurance."  This "Download Insurance" is not insurance at all.  Download Insurance

is a service that purports to allow consumers to download the Norton Products they are

purchasing for up to one-year after purchase.  Download Insurance does not protect against loss;

rather, it purports to provide a service that allows consumers a method to re-download Norton

software after the initial purchase.

    5.      Even though customers had purchased a license to use the software for a period of

one year or more, and had the right to load the software on up to three computers at any time

during the license period, Defendants falsely told customers that they must purchase the

Download Insurance if they wanted to continue to be able to download the Norton Products after

the first sixty days and up to one year.  In reality, any customers was permitted to download the

Norton Products he purchased directly from Symantec at any time during the license period

regardless of whether he purchased Download Insurance.  Although the Download Insurance

was not necessary to re-download the purchased Norton Product, a customer had to affirmatively

remove the Download Insurance from his cart to avoid being charged for Download Insurance.

By auto-populating the online shopping cart with Download Insurance, Defendants intentionally

represented to consumers that the "insurance" in some way protected their software purchase

when, in fact, it was completely unnecessary to protect their software purchase because

Symantec had a uniform policy of allowing customers to re-download purchased software at any

time with or without the Download Insurance.  This information, which Defendants omitted on

their websites and in other publications, was plainly material to Class members in deciding

whether to purchase Download Insurance for their Norton products and would have led them to

reject the purchase of "insurance" that, in reality, provided no benefit.  Moreover, Defendants

had an affirmative duty to inform Class members that Download Insurance was superfluous and

unnecessary given that, among other things: (i) Defendants had voluntarily made partial and half-

truth disclosures regarding Download Insurance that were fundamentally misleading; and (ii)

Defendants had superior knowledge regarding the true nature of Download Insurance that

members of the Class necessarily lacked.

　　　　6.　　Symantec began selling Norton Products directly to consumers from its own

e-commerce internet platform during 2009 and 2010.  Prior to that time, Symantec contracted

with Digital River to run its e-commerce internet platform.  The process of describing and selling

Download Insurance to consumers while Digital River ran the e-commerce platform was

substantially the same as Symantec's current practices, except that the Download Insurance was

called "Extended Download Service."  Symantec and Digital River shared in the returns from the

sale of Download Insurance.  At all times material hereto, Digital River was aware that

consumers could download Norton Products directly from Symantec at any time during their

license periods, but nevertheless approved and posted the misrepresentations and omissions on

the e-commerce internet platform described herein.

7.     After July 1, 2010, Symantec began offering consumers a substantially identical

"service" to the Extended Download Service previously sold by Digital River:  Norton

Download Service.

8.     In apparent recognition of the false and misleading nature of its representations,

Symantec stopped promoting and selling Download Insurance on its website subsequent to the

filing of the original complaint in this action.  Symantec further removed all consumer support

explanations related to Download Insurance from its website.

9.     For these reasons, Plaintiffs allege that Defendants' practices, by structure and

design, fraudulently deceived and induced consumers to purchase unnecessary Download

Insurance, which directly caused them to incur loss and damage.

10.     Plaintiffs bring this class action against Defendants for damages, restitution and

other relief available at law and in equity on behalf of themselves as well as on behalf of the

members of the following class ("Class"):

> All persons in the United States who purchased Extended
> Download Service or Norton Download Insurance.

**THE PARTIES**

11.     Plaintiff Devi Khoday is a citizen of the State of California who purchased Download Insurance directly from Symantec without knowledge that she could re-download Norton Software during her license period without the insurance.

12.     Plaintiff Danise Townsend is a citizen of the State of Florida who purchased Download Insurance from Digital River without knowledge that she could re-download Norton Software during her license period without the insurance.

13.     Defendant Symantec is a Delaware Corporation with its principal place of business in Mountain View, California.   Defendant Symantec is a citizen of Delaware and California under 28 U.S.C. § 1332(c)(1).  The key acts of deception on the part of Symantec alleged herein were approved and executed at Symantec's headquarters in Mountain View, California.

14.     Defendant Digital River, Inc. is a Delaware Corporation with its principal place of business in Eden Prairie, Minnesota.  Defendant Digital River is a citizen of Delaware and Minnesota under 28 U.S.C. § 1332(c)(1).  The key acts of deception on the part of Digital River were approved and executed at Digital River's headquarters in Eden Prairie, Minnesota.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332.  In the aggregate, the claims of Plaintiffs and the members of the Class exceed the jurisdictional minimum amount in controversy of $5,000,000.00, exclusive of costs and interests, 28 U.S.C. § 1332(d)(2)(A) and § 1332(6).  This is a class action in which some of the members of the Class are citizens of a different state than the Defendants.  There are more than 100 members of the Class.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) in that Digital River resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in Minnesota.  In addition, Digital River's Terms and Conditions of Sale state that the parties are required to bring suit in Hennepin County, Minnesota.

## FACTUAL ALLEGATIONS

17.     Symantec is a leading international provider of computer security software and information management services to consumers, businesses, and governments.

18.     Symantec sells consumers an array of products to protect their computers and personal information through their brand, Norton.  An online catalogue of these products can be accessed through Symantec.com or Norton.com.

19.     Once a consumer selects the Norton Products he desires to purchase, the consumer must add the products to his online shopping cart.  A new page, "Shopping Cart" appears, with a line item describing the products selected and the price of the products.  Until recently, a line item for "Extended Download Service" or "Norton Download Insurance" would appear automatically on the line below.  The price for this Download Insurance varied but was generally between $5.99 and 10.99.

20.     The consumer had the option to click on a link located on the Download Insurance line item labeled "What's this?"  When a consumer followed this link he saw the following pop-up (as of July 1, 2010):

**Norton Download Insurance**

When you purchase downloadable software from the Norton Store, you automatically receive the ability to download your software for 60 days from the date of purchase. Norton Download Insurance extends the time you can access your downloadable software by providing you the freedom and flexibility to download or re-

download your software for one year. If you need to re-download your software it will be available 24 hours a day, 7 days a week for one year from the date of purchase from your Norton Account. Just log into your Norton Account at www.mynortonaccount.com, look up your order and click on the link provided.

**Gain flexibility and peace of mind!**

If you decide to replace your PC or if your PC has problems, is damaged or stolen and you need to reinstall your software, with Norton Download Insurance you have the peace of mind of knowing you can re-download your software at anytime for one year. Norton Download Insurance may be refunded within 60 days from your date of purchase. Applicable taxes are refunded on eligible returns.

21.     Consumers who purchased a Norton product before Norton ended its arrangement with Digital River saw the following pop-up after clicking on the "What's this" link:

**When you purchase downloadable software from Symantec's online store, Digital River, Symantec's authorized online retailer, automatically grants you 60 days from the date of purchase to download your software order.**

If you add Extended Download Service to your downloadable software purchase order, Digital River will keep a backup of all the software on your order for ONE YEAR. If you need to re-download your software, or access your Serial Key; it will be available 24 hours a day, 7 days a week for ONE YEAR from the date of purchase by going to www.symantecstore.com/orderlookup.

22.     Both pop-ups were designed to make the consumer believe that he would be unable to access and re-download the software he was purchasing beyond sixty days unless the consumer elected to purchase Download Insurance.

23.     In reality, a consumer was permitted by Symantec to re-download the software and services purchased from either Digital River or Symantec at any time, provided he had an active license, even if he did not purchase Download Insurance.  Symantec has its own business purposes and incentives to ensure that consumers are able to re-download Norton software on

7

their computers.  Symantec can only solicit existing customers for renewal of their antivirus subscriptions through the installed programs if the software is downloaded on their customers' computers.  Symantec never intended, and does not now intend, to prevent consumers from re-downloading software without charge or without Download Insurance, as evidenced by Symantec's recent elimination - after the filing of this lawsuit - of all references to Download Insurance in its customer support website while continuing to permit free downloads..

24.     Defendants intentionally led consumers to believe that they needed to purchase Download Insurance in order to re-download their Norton software beyond 60 days from the date of purchase through their pop-up descriptions or advertisements, scripted sales communications, and by auto-populating the "Check Out" screen with this unnecessary "service."

25.     Consumers, such as Plaintiffs, were routinely deceived by the Defendants' pop-ups and believed that they had to purchase the Download Insurance in order to re-download any products purchased from Defendants beyond sixty days.

26.     Moreover, it is not obvious to consumers that purchasing Download Insurance is optional, as Defendants automatically added Download Insurance to the consumer's shopping cart without the consumer's consent.  This put the onus on the consumer to affirmatively remove Download Insurance from the shopping cart to prevent being charged.

### The Lead Plaintiffs' Experiences

27.     On or about February 24, 2010, Ms. Khoday visited the Symantec online store from Downey, California.  She decided to purchase Norton 360, version 4.0, and clicked on the link to purchase the product.  She was then taken to a shopping cart checkout page that listed the Norton 360 software for $59.99 on one line.  The line below listed an additional charge of $6.99

for "Download Insurance."  Ms. Khoday clicked on the "What's this?" link and read the text described in paragraph 20.

28.     Ms. Khoday wanted the ability to download the software beyond 60 days after purchase.  She understood from the text that if she wanted to be able to download the software beyond 60 days after the purchase, she needed to buy the Download Insurance.  If she had been informed that she could re-download the software from Symantec's website at any time without charge during the one year license period, Ms. Khoday would not have purchased the Download Insurance.

29.     Ms. Townsend visited the Symantec online store on or about August 29, 2007 from Miami, Florida and purchased Norton Internet Security.  The online store at the time was operated by Digital River, who developed the content with the consent and approval of Symantec.  The website contained the "What's this" link and text described in paragraph 21. Ms. Townsend reviewed the products listed in the online store web pages.  She had questions about the various options and called the sales support number listed on the website and spoke to a sales representative.  The sales representative she spoke with was an employee of Digital River who, upon information and belief, used scripts and training materials provided by Digital River.

30.     The sales representative verbally confirmed the substance of the text described in paragraph 21.  When asked about the benefits of purchasing the Norton Internet Security online versus purchasing a CD of the software, Ms. Townsend was told that if she purchased the software online and also purchased the Extended Download Service, she could re-download the software at any time during her one year license period.  Ms Townsend was not told that she could re-download the software at any time during her license period without charge by visiting the Symantec website, even if she did not purchase the Extended Download Service.  If she had

9

been informed that she could re-download the software at any time from Symantec's website

without charge during the license period, Ms. Townsend would not have purchased the Extended

Download Service.

## CLASS ACTION ALLEGATIONS

31.     This class action is brought and may be maintained pursuant to Fed. R. Civ. P.

23(a) and Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3).  Plaintiffs seek to represent a class

comprising:

> All persons in the United States who purchased Extended
> Download Service or Norton Download Insurance.

32.     Excluded from the Class are governmental entities, Defendants, any entity in

which Defendants have a controlling interest, and Defendants' officers, directors, legal

representatives, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge,

justice, or judicial officer presiding over this matter and the members of their immediate families

and judicial staff.

33.     Plaintiffs reserve the right to modify the Class description pursuant to

subdivisions (b)(1), (b)(2) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure.

34.     This action is properly brought as a class action under Fed. R. Civ. P. 23(b)(1),

(b)(2), and (b)(3) for the following reasons:

a.     Defendants deceived thousands of persons into purchasing Download

Insurance by advertising the service as necessary to re-download Norton Products after 60 days

and intentionally omitting the material fact that the software could be re-downloaded at any time

during the license period at no charge.  Therefore, the class consists of thousands of persons, and

joinder of all members is impracticable.

10

b.      There are questions of law or fact common to the Class, which predominate over any questions affecting individual members, including:

i.      Whether the sale of Download Insurance constitutes an unfair or deceptive practice within the meaning of California Business and Professions Code section 17200 in that Symantec's conduct is unfair, unlawful and/or fraudulent;

ii.     Whether a reasonable consumer would be likely to be deceived by the offer to purchase unnecessary Download Insurance;

iii.    Whether Defendants' actions in obtaining money from Plaintiffs and members of the putative class constitutes unjust enrichment;

iv.     Whether Defendants intentionally misled consumers about the value and necessity of Download Insurance;

v.      Whether Symantec's actions and/or omissions violate California's Consumers Legal Remedies Act, Civ. Code § 1750, et seq.;

vi.     Whether Digital River's actions violated Minnesota's Statute 325F.67 and Minnesota's Statute 325F.69; and

vi.     Whether Plaintiffs and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded.

35.     Plaintiffs contend that these common questions should be decided under California state laws and Minnesota state laws.  Symantec is headquartered in Mountain View, California and the Norton License Agreement states that claims relating to the use of Norton software products shall be governed by the substantive laws in force in the State of California.  Digital River is headquartered in Eden Prairie, Minnesota and Digital River's Terms and

Conditions of Sale state that claims related to sales by Digital River shall be governed by the substantive laws in force in the State of Minnesota.  Accordingly, Plaintiffs' claims are pled under California and Minnesota law.

c.      The claims asserted by Plaintiffs are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since Defendants induced Plaintiffs to purchase unnecessary Download Insurance.

d.      Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs seek no relief that is antagonistic or adverse to other members of the class and have no conflict of interest with other Class members in the maintenance of this class action.  Plaintiffs have retained counsel competent and experienced in class and consumer litigation and will vigorously pursue the claims of the Class.

e.      Individual adjudication of these claims with respect to individual members of the Class risks establishment of inconsistent standards of conduct for the Defendants, for example, establishing relief that could require Defendants to refund the money of certain class members, but not others.

f.      Defendants have acted on grounds generally applicable to Plaintiffs and the Class as alleged herein, thereby making appropriate final injunctive relief and incidental damages with respect to the Class as a whole.

g.      A class action is superior to any other available means for the adjudication of the controversy.  This action will enable the orderly and expeditious administration of the Class claims; economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured at the lowest cost and with the least expenditure of judicial resources.

12

h.      Because the loss suffered by the Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members to seek redress individually for the wrongs done to them.  Plaintiffs believe that the Class members, to the extent they are aware of their rights against Defendants, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages and/or the value of individual injunctive relief.  Hence, a class action is the only feasible means of recovery for the Class members.  Furthermore, without a class action, Class members will continue to suffer damages and Defendants will continue to violate the law, retaining the proceeds from their wrongful practices.

i.      Plaintiffs do not anticipate any difficulty in management of this action because the evidence proving Defendants' legal violations is readily ascertainable through discovery.  The identities of the Class are known by Defendants, and damages can be calculated from Defendants' records.  This action poses no unusual difficulties that would impede its management by the Court as a class action.

## FIRST CAUSE OF ACTION
### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200
### (On behalf of the Plaintiffs and the Class against Symantec)

36.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 35 of this complaint.

37.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Symantec's actions as described herein.

38.     Symantec's actions as alleged in this complaint constitute an unfair or deceptive practice within the meaning of California Business and Professions Code section 17200 in that Defendant's actions are unfair, unlawful, and/or fraudulent.

13

39.     Symantec's business practices are unfair because they violate established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that Symantec (a) induced consumers to believe that Download Insurance was required to re-download Norton Products after sixty days; (b) concealed that Norton Products were available for re-download without purchasing Download Insurance; and (c) required consumers to affirmatively remove Download Insurance from their shopping carts to avoid purchase of Download Insurance.

40.     Symantec's business practices are fraudulent because they deceived consumers into believing that Download Insurance was required to re-download Norton Products after sixty days when in reality consumers could re-download Norton Products throughout the license period.  Symantec told consumers that their Norton purchase automatically came with the ability to download the software for 60 days and that consumers could extend the time in which they could download the software for the full license period by purchasing Download Insurance. Making these representations without further disclosing the fact that consumers could re-download the software without charge at any time from Symantec's website was "likely to mislead" within the meaning of California Civil Code Section 1710, and gave rise to a duty to disclose such fact.

41.     Symantec had superior knowledge and bargaining power in its transactions with consumers.  The fact that consumers could re-download Norton software without charge at any time from Symantec's website was material because reasonable consumers, like Plaintiffs, will not pay for a service that they know is otherwise available free of charge.

42.     Symantec's practices are unlawful because they constitute false advertising and lead to unjust enrichment.

43. Symantec's wrongful business practices constitute a continuing course of conduct of unfair competition.

44. Symantec's business acts and practices, as alleged herein, have caused injury to Plaintiffs and the Class.

45. Plaintiffs and the Class seek an order requiring Symantec to disgorge all ill-gotten gains and provide full restitution of all monies it wrongfully obtained from Plaintiffs and the Class through the scheme described herein.

46. Plaintiffs and the Class seek an award of attorneys' fees under California Code of Civil Procedure § 1021.5.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750
**(On behalf of the Plaintiffs and the Class against Symantec)**

47. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 35 of this complaint.

48. Symantec is a person as defined by California Civil Code § 1761(c).

49. Symantec performs services within the meaning of California Civil Code §1761(b).

50. Symantec or Norton Download Insurance is a service within the meaning of California Civil Code § 1761 (b). Consumers understand they are buying a service separate and apart from the software itself, and Defendants separately charge for this service apart from the software. The service offered is the ability to re-download software from Symantec or Digital River at a future date. This Download Insurance was even specifically described as a "service" when offered by Digital River under the name "Extended Download Service."

15

51.     Plaintiffs and the Class are consumers within the meaning of California Civil Code §1761(d).

52.     Symantec violated California Civil Code § 1770(a)(5) by leading consumers to believe that Download Insurance is necessary to download Norton Products after sixty days.

53.     Symantec violated California Code § 1770(a)(9) by advertising Download Insurance as necessary to download Norton Products after sixty days.

54.     Symantec violated California Civil Code § 1770(a)(15) by intentionally leading consumers to believe that they would need Download Insurance in order to download Norton Products after sixty days.

55.     Plaintiffs and the Class seek an order requiring Symantec to disgorge all ill-gotten gains and provide full restitution of all monies it wrongfully obtained from Plaintiffs and the Class through the scheme described herein.  See Civil Code § 1780(a).

56.     Plaintiffs and the Class seek an award of actual damages under Civil Code § 1780(a).

57.     Plaintiffs and the Class seek an award of punitive damages under Civil Code § 1780(a).

58.     Plaintiffs and the Class seek an award of attorneys' fees under Civil Code § 1780(e).

### THIRD CAUSE OF ACTION
### VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT – FALSE STATEMENT IN ADVERTISEMENT, MN STATUTES § 325F.67, et seq.
### (On behalf of Plaintiffs and the Class against Digital River)

59.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 35 of this complaint.

16

60.     The Extended Download Service sold by Digital River is merchandise as defined in Minnesota Statutes § 325F.68 Subd. 2.

61.     Digital River is a person as defined in Minnesota Statutes § 325F.68 Subd. 3.

62.     Digital River intentionally misrepresented the value and necessity of the Extended Download Service through the pop-up described above to induce consumers to purchase Extended Download Service.  Digital River employed deceptive practices by automatically adding Extended Download Service to consumers' shopping carts, further inducing consumers to purchase unnecessary Extended Download Service.

63.     Digital River included materially misleading and deceptive statements about the value and necessity of Extended Download Service in the pop-up shown to consumers during the sale of Extended Download Service.  Digital River also deceptively touted the necessity and utility of Extended Download Service by automatically adding Extended Download Service to consumers' shopping carts.

64.     Digital River told consumers that when they purchased a Norton product from Symantec's online store, Digital River, (described as Symantec's "authorized" online retailer), would "grant" the consumer 60 days to download the software.  Digital River further stated to the consumer that "if" the consumer purchased Digital River's Extended Download Service, Digital River would keep a "backup" of the software purchased by the consumer and permit the consumer to re-download the software from Digital River for "ONE YEAR."

65.     The facts disclosed by Digital River regarding the Extended Download Service were deceptive and misleading because  consumers could re-download the software at any time during the license period from Symantec's website, and in the various other ways described above, even if the consumer did not purchase the Extended Download Service.  Moreover,

whereas Digital River offered to keep a "backup copy" of the software purchased by the consumer for future downloading, this "backup copy" would be inferior to the software available for download directly from Symantec at no charge because it would not contain all the updates made since the date of purchase.

66.    Digital River had superior knowledge and bargaining power in its transactions with consumers.  Digital River knew these facts, but concealed them, in order to induce consumers to purchase the unnecessary Extended Download Service.  These concealed facts are material because reasonable consumers, like Plaintiffs, will not pay for a service that they know is otherwise available free of charge.

67.    Plaintiffs and the Class seek an order requiring Digital River to disgorge all ill-gotten gains and provide full restitution of all monies it wrongfully obtained from Plaintiffs and the Class through the scheme described herein.

68.    Plaintiffs and the Class also seek an award of damages for violations of Minnesota Statutes § 325F.67 pursuant to Minnesota Statutes § 8.31, subd. 3a.

69.    Plaintiffs and the Class seek an award of attorneys' fees for violations of Minnesota Statutes § 325F.67-§ 325F.69 pursuant to Minnesota Statutes § 8.31, subd. 3a.

### FOURTH CAUSE OF ACTION
### DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201 AND Fed. R. Civ. P. 57
### (On behalf of Plaintiffs and the Class against all Defendants)

70.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 35 of this complaint.

71.    There exists an actual controversy regarding the rights of Plaintiffs and Defendants with respect to Defendants' actions herein.

72.     By virtue of Defendants' deceptive and unlawful business practices, Plaintiffs seek a declaration from this Court that the practices described herein with respect to Download Insurance are unlawful to prevent the Defendants from re-instituting such practices in the future.

73.     This claim is common to the members of the Class who seek a declaration of their rights and legal obligations in addition to such other relief which might be granted by this Court.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Class against all Defendants)**

74.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 35 of this complaint.

75.     Plaintiffs purchased unnecessary Download Insurance from Defendants as a direct result of Defendants' material misrepresentations and omissions.

76.     Defendants generated profits from the sale of Download Insurance.

77.     Defendants have been knowingly and unjustly enriched at the expense of and to the detriment of Plaintiffs and each member of the Class by collecting money to which it is not entitled.

78.     It  would be morally wrong to permit Defendants to enrich themselves at the expense of Plaintiffs and the Class. Defendants should be required to disgorge this unjust enrichment.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request judgment against Defendants for themselves and the members of the class as follows:

A.      Certification of the Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2) or (b)(3);

19

B.      Restitution of all charges paid by Plaintiffs and the Class because of Defendants' unlawful, unfair, and/or fraudulent business practices complained of herein;

C.      Disgorgement and restitution to Plaintiffs and to members of the Class of all monies wrongfully obtained and retained by Defendants;

D.      Compensatory and actual damages in an amount according to proof at trial;

E.      A declaration of the parties rights and obligations;

F.      Statutory damages and penalties, as provided by law;

G.      Prejudgment interest commencing on the date of payment of the charges and continuing through the date of entry of judgment in this action;

H.      Costs and fees incurred in connection with this action, including attorneys' fees, expert witness fees, and other costs, as provided by law; and

I.      Punitive damages, as provided by law against Symantec; and

J.      Granting such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby request a jury trial for all issues so triable.

DATED this 14th day of April, 2011              .              Respectfully submitted,

By: _____/s/_____

Whitney R. Case
Andrew N. Friedman
Victoria S. Nugent
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699
afriedman@cohenmilstein.com
wcase@cohenmilstein.com

Richard Wentz
Jean Wentz
THE WENTZ LAW FIRM
2955 East Hillcrest Drive
Suite 123
Thousand Oaks, CA  91362
Telephone: (805) 374-0060
Facsimile: (888) 855-8124
rick.wentz@gmail.com
jean.wentz@gmail.com

Lee S. Shalov
LAW OFFICE OF LEE S. SHALOV
145 FOXHUNT CRESCENT
SYOSSET, NY
Telephone: (516) 624-6691
Facsimile: (516) 624-6692
leeshalov@gmail.com

Karen Hanson Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401
Telephone: 612-596-4097
Facsimile: 612-339-0981
khriebel@locklaw.com

987534.2 2