# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DEVI KHODAY and DANISE TOWNSEND, individually and on behalf of the class they represent,<br><br>        Plaintiffs,<br><br>v.<br><br>SYMANTEC CORP. and DIGITAL RIVER, INC.,<br><br>        Defendants. | NO. 11-cv-00180 (JRT/TNL)<br><br><u>CLASS ACTION</u><br><br><br>**MEMORANDUM IN OPPOSITION TO DIGITAL RIVER, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

## <u>INTRODUCTION</u>

This lawsuit challenges Defendants' practice of tricking consumers into paying a fee for a service that Defendants willingly and routinely provided for free. The service, entitled Extended Download Service or Download Insurance (collectively "Download Insurance"), permitted customers to re-download software they had already purchased. In order to induce customers to buy this Download Insurance, Defendants told them that the software they purchased was only available for download during a 60-day window after the sale, even though the license period was much longer. Defendants warned that the software would not be available beyond 60 days unless the customer purchased the Download Insurance. That was simply false. The software was always available to re-download 24/7, for free, at Symantec's website, and is still available to this day.

Digital River, Inc. ("Digital River") has moved to dismiss the three claims asserted against it in Plaintiffs' Amended Complaint (the "Amended Complaint" or "Compl."): Violation of the Minnesota Consumer Fraud Act (the "CFA"); Unjust Enrichment; and Declaratory Judgment.[1]  For the reasons stated below, Digital River's motion should be denied.

## I.     FACTUAL ALLEGATIONS

Symantec is among the world's largest providers of anti-virus and internet security software ("Norton Products") to consumers.  Compl. ¶ 2.  Symantec began selling Norton Products directly to consumers from its own e-commerce internet platform during 2009 and 2010.  *Id.* ¶ 6.  Prior to that time, Symantec contracted with Digital River to run its e-commerce internet platform.  *Id.*

In order to purchase a Norton Product from Symantec's internet store (hosted by Digital River), a consumer was required to add the product to his online shopping cart. *Id.* ¶ 19.  A new page, "Shopping Cart," would appear, with a line item describing the products selected and the price of the products.  *Id.*  Additionally, a line item for "Extended Download Service" would appear automatically on the line below.  *Id.*  The

---

[1] Digital River's motion to dismiss is based entirely on the allegations concerning plaintiff Danise Townsend.  See Digital River, Inc.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Complaint ("Digital River Mem.") at 2 n.1, ECF No. 52.  Because Digital River's motion is limited to the claims of Ms. Townsend, this opposition does not address Ms. Khoday's claim (i.e. purchases directly from Symantec's own online store).  To the extent relevant to Plaintiffs' claims against Digital River, Plaintiffs incorporate by reference their opposition to Symantec Corporation's motion to dismiss.

price for this Download Insurance varied but was generally between $5.99 and $10.99. *Id.*

Even though consumers had purchased a license to use the software for a period of one year or more, and had the right to load the software on up to three computers at any time during the license period, Defendants falsely told consumers that they must purchase the Download Insurance if they wanted to continue to be able to download the Norton Products after the first sixty days of their license period. *Id.* ¶ 5. Specifically, consumers were told:

> **When you purchase downloadable software from Symantec's online store, Digital River, Symantec's authorized online retailer, automatically grants you 60 days from the date of purchase to download your software order.**
>
> If you add Extended Download Service to your downloadable software purchase order, Digital River will keep a backup of all the software on your order for ONE YEAR. If you need to re-download your software, or access your Serial Key; it will be available 24 hours a day, 7 days a week for ONE YEAR from the date of purchase by going to www.symantecstore.com/orderlookup.

*Id.* ¶ 21 (emphasis added).

In reality, Symantec had a uniform policy permitting any consumer to re-download the Norton Products he purchased directly from Symantec for free at any time during the license period regardless of whether he purchased Download Insurance. *Id.* ¶ 5. Although the Download Insurance was not necessary to re-download the purchased Norton Product, a consumer had to affirmatively remove the Download Insurance from his cart to avoid being charged for Download Insurance. *Id.* ¶ 5. Digital River was

aware that consumers could download Norton Products directly from Symantec at any time during their license periods, but nevertheless approved and posted the misrepresentations and omissions on the e-commerce internet platform described herein. *Id.* ¶ 6.

This "Download Insurance" was not insurance at all. *Id.* ¶ 4. Download Insurance did not protect against loss; rather, it purported to provide a service that allowed consumers a method to re-download Norton software after the initial purchase. *Id.*

Ms. Townsend visited the Symantec online store on or about August 29, 2007 from Miami, Florida and purchased Norton Internet Security. *Id.* ¶ 29. The online store at the time was operated by Digital River, which developed the content of the site. *Id.* The website contained the description of "Extended Download Service" reproduced above. *Id.* Ms. Townsend reviewed the products listed in the online store web pages and spoke to a sales representative. *Id.* Ms. Townsend did not understand that she could re-download the software at any time during her license period without charge by visiting the Symantec website, even if she did not purchase the Extended Download Service. *Id.* ¶ 30. If she had been informed that she could re-download the software at any time from Symantec's website without charge during the license period, Ms. Townsend would not have purchased the Extended Download Service from Digital River. *Id.*

Digital River had an affirmative duty to inform Ms. Townsend and class members that Download Insurance was superfluous and unnecessary given that, among other things: (i) Defendants had voluntarily made partial and half-truth disclosures regarding Download Insurance that were fundamentally misleading; and (ii) Defendants had

superior knowledge regarding the true nature of Download Insurance that members of the Class necessarily lacked. *Id.* ¶ 5.

Finally, in apparent recognition of the false and misleading nature of its representations, Symantec stopped promoting and selling Download Insurance on its website subsequent to the filing of the original complaint in this action. *Id.* ¶ 8. Symantec has further removed all customer support explanations related to Download Insurance from its website. *Id.* Digital River stopped selling Download Insurance through the Norton website in June 2010 (when Symantec began selling its own Download Insurance) but Digital River continues to sell Download Insurance on other websites.[2]

## II.    LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint generally need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544 (2007) (internal quotations omitted)). Thus, a plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Furthermore, "the complaint should be read as a whole, not parsed piece by piece to determine whether

---

[2] *Id.* ¶ 7; Digital River Form 10-K for the period ending December 31, 2010 at 35, a copy of which is attached to the Declaration of Karen Hanson Riebel ("Riebel Decl.") as Exhibit 1.

each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009).

Plaintiffs have sufficiently pled each count of the Complaint.

## ARGUMENT

**I.   THE CLAIMS ASSERTED IN THIS ACTION WILL BENEFIT, AND ALREADY HAVE BENEFITTED, THE PUBLIC AT LARGE**

As described in the Amended Complaint, Defendants marketed and sold a purported product – Download Insurance – that was completely useless and unnecessary. *See, e.g.*, Compl. ¶¶ 4-5.   The deceptive and misleading statements associated with this "insurance" appeared not in isolated, one-on-one communications, but were featured prominently on Defendants' internet websites, and, thus, were observable by virtually every consumer interested in purchasing a Symantec product. *Id.* ¶¶ 19-22.   Moreover, Defendants' Download Insurance scheme was perpetrated not just on Plaintiffs, but on thousands – if not millions – of consumers across the country.   According to the Declaration of a Digital River officer in a California litigation, Download Insurance "would have been placed into the [shopping] cart of over 95% of customers who selected a download from Digital River [a]fter April 9, 2006."[3]   Moreover, "[f]or the period from

---

[3] *See* Declaration of Richard Bump (the "Bump Declaration"), ¶ 7, in Support of Digital River, Inc.'s Opposition to Plaintiff's Motion for Class Certification filed in an action captioned *Saulic v. Symantec Corp. et ano.*, Case No. SACV 07-610 AHS, United States District Court, Central District of California, Southern Division (emphasis added).   A copy of the Bump Declaration is attached to the Hanson Declaration as Exhibit 2.   The Court may take judicial notice of the Bump Declaration in considering Defendants' motion to dismiss under Federal Rule 12(b)(6).   *See Kivel v. ABN AMRO Mortg. Group, Inc.*, 2006 WL 1579819, at *3 (D. Minn. June 1, 2006) (Court may take judicial notice of pleadings, documents, briefs, evidentiary submissions, and decisions from another

April 9, 2006 through March 31, 2008, <u>over half</u> the customers who purchased digital products from Digital River also purchased" download insurance.  *Id.* ¶ 11 (emphasis added).  Given that the sale of Symantec products generated over $200 million in revenue for Digital River between 2008 and 2010,[4] the number of persons and entities affected by Defendants' misleading practices is extraordinary, to say the least.

Plaintiffs seek a broad range of relief to redress the harm sustained by Defendants' conduct, not just for themselves, but for the multitude of consumers who have been injured, and may in the future be injured, by Defendants' deceptive practices.  This includes compensatory damages, disgorgement and restitution, and declaratory and injunctive relief.  *See* Compl. at 19, 20.  Significantly, this action has already produced substantial benefits for the public: promptly after this action was filed, Symantec stopped promoting and selling Download Insurance on its website.  *Id.* ¶ 8.

Against this backdrop, Digital River's assertion that the deceptive practices and false advertising claims asserted in Plaintiffs' Third Cause of Action should be dismissed

---

lawsuit involving the plaintiff).

[4] *See* Riebel Decl., Ex. 1 at 35.  Digital River reports that earnings from its business relationship with Symantec accounted for 24.3% of its revenue in 2008, 21.5% of its revenue in 2009 and 5.8% of its revenue for 2010.  *Id.* at 38.  Applying these percentages to Digital River's total revenue for each year respectively, Plaintiff determined Digital River's total revenue from its dealings with Symantec for 2008 through 2010 to be $203.66 million:

|  | 2010 | 2009 | 2008 |  |
|---|---|---|---|---|
| D.R. Total Rev. | $363.2 | 403.8 | 394.2 |  |
| % of Symantec | 5.8% | 21.5% | 24.3% |  |
| Calculation | $21.06 | $86.81 | $95.79 | ---> Total $203.66 million |

*Id.* at 35, 38.

because "Plaintiffs fail to demonstrate that this lawsuit benefits the public" (*see* Digital River Mem. at 3), is completely without merit.  As demonstrated below, this action will benefit, and already has benefitted, consumers across the country, and asserts precisely the types of claims Minnesota courts have long recognized as fulfilling important interests and objectives for the general public.

Minnesota's Consumer Fraud Act, Minn. Statutes § 325F.67, *et seq*. (the "CFA"), provides as follows:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

*See* Minn. Stat. § 325F.69, Subdiv. 1.  As the Minnesota Supreme Court observed, "the CFA is remedial and should be <u>liberally construed in favor of protecting consumers</u>."  *Ly v. Nystrom*, 615 N.W.2d 302, 308 (2000) ("*Ly*") (emphasis added).

Enforcement of the CFA is not limited to the Minnesota Attorney General's office.  Rather, under Minnesota's Private Attorney General Statute, Minn. Stat. § 8.31, subdivision 3a (the "Private AG Act"), "any person injured by a violation of [the CFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees."  As the Court observed in *Ly*, the "Private AG Statute . . . advances the legislature's intent to prevent fraudulent representations and deceptive practices with regard to consumer products by offering an incentive for defrauded consumers to bring claims in lieu of the attorney general."  *Ly*,

615 N.W.2d at 311.   The Private AG Act applies "only to those claimants who demonstrate that their cause of action benefits the public." *Id*. at 313.   When the plaintiff is defrauded "in a single one-on-one transaction . . .," the Private AG Act does not apply. *Id*.   Otherwise, "'every artful counsel could dress up his dog bite case' to come under an attorney's fee statute." *Id*. at 312 (citation omitted).   However, satisfying "the 'public benefit' requirement is not onerous." *The Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 946 (D. Minn. 2009).   Moreover, the absence of a request for injunctive relief "does not preclude either party from satisfying the public benefit requirement." *ADT Sec. Servs., Inc. v. Swenson*, 687 F. Supp. 2d 884, 891-92 (D. Minn. 2009).   Indeed, even where the allegedly deceptive practices have been halted, a public benefit may be discerned where money damages are sought, particularly for a class of defrauded consumers. *In re National Arbitration Forum Trade Practices Litig.*, 704 F. Supp. 2d 832, 839 (D. Minn. 2010) (where Attorney General secured consent decree halting allegedly deceptive trade practices, Court still found that "Plaintiffs' continued pursuit of monetary damages for the class against NAF has a public benefit.")   "To determine whether a lawsuit is brought for the public benefit, the Court must examine not only the form of the alleged misrepresentation, but also the relief sought by the plaintiff." *Tuttle v. Lorillard Tobacco Co.*, No. CIV. 99-1550 (PMM/JGL), 2003 WL 1571584, at *6-7 (D. Minn. Mar. 3, 2003).   For example, courts have found that individual claims for personal injury, negligence and products liability, where the plaintiff seeks damages for medical expenses, pain and suffering and emotional distress, may not be maintained

under the Private AG Act.[5]   In addition, where the plaintiffs seek exclusively monetary damages for themselves, courts may find no public benefit underlying the plaintiffs' claim.[6]

Conversely, where the defendants' alleged deceptive practices are facilitated through public advertisements and sales presentations, courts routinely find that claims under the Private AG Act may benefit the public.[7]   For example, where advertisements and sales pitches are presented to "the public at large," a public benefit may be discerned. *Collins*, 655 N.W.2d 320, 330.[8]   Similarly, when false "assurances" received by the

---

[5] *See, e.g., Overen v. Hasbro, Inc.,* CIV. No. 07-1430 (RHK/JSM), 2007 WL 2695792, at *3 (D. Minn. Sept. 12, 2007) (where the hand of plaintiff's minor child became trapped and burned inside an Easy-Bake Oven manufactured by the defendant, the Court dismissed the plaintiff's claim under the Private AG Act because the "essence of Plaintiff's lawsuit here is to compensate her for her daughter's personal injury"); *Pecarina v. Tokai Corp.*, No. CIV. 01-1655 (ADM-AJB), 2002 WL 1023153, at 5 (D. Minn. May 20, 2002) (where the plaintiffs' minor children sustained burns from a lighter, the Court dismissed the plaintiffs' claim under the Private AG Act because the "essence of Plaintiffs' lawsuit is personal injury, involving allegations of negligence and products liability"); *Behrens v. United Vaccines, Inc.*, 228 F. Supp. 2d 965, 966, 972 (D. Minn. 2002) (finding no public benefit where the plaintiffs sought "personal, business damages" for a vaccine that did not "inoculate their mink against canine distemper.").

[6] *See, e.g., Kalmes Farms, Inc.*, No. CIV. 02-1141 (DWF/SRN), 2004 WL 114976, at *6 (D. Minn. Jan. 16, 2004) (finding no public benefit where the plaintiff sought exclusively monetary damages for itself for an allegedly defective "unloader").

[7] *See, e.g., Curtis v. Altria Group, Inc.,* 792 N.W.2d 836, 850 (Minn. Ct. App. 2010) ("We conclude that the pubic-benefit requirement is met in this case . . . by the fact that Philip Morris made allegedly false representations to the general public, and we reject the argument that prior action by the attorney general deprives this lawsuit of public benefit"); *Collins v. Minnesota School of Business, Inc.*, 655 N.W.2d 320, 330 (2003) (finding public benefit requirement satisfied where the defendant "made misrepresentations to the public at large by airing a television advertisement" and "made numerous sales and information presentations" to students.)

[8] *See also The Kinetic Co.,* 672 F. Supp. 2d at 946 ("This was not a one-off transaction.

plaintiff "are received throughout the country," a public benefit may be found.  *ADT Security Services, Inc. v. Swenson*, 687 F. Supp. 2d 884, 892, (D. Minn. 2009).[9]

In light of these authorities, it is abundantly clear that the claims asserted in this action satisfy the public benefit requirement of the Private AG Act.

**1.     Defendants' Misstatements Were Made to the Public at Large**.

As described above, Defendants' deceptive statements regarding the nature and purpose of Download Insurance appeared for years on Defendants' internet websites, an indisputably public medium.  *See, e.g., Reno v. American Civil Liberties Union*, 521 U.S. 844, 853-54 and 869 (1997) (describing the internet as a "vast democratic" medium and the World Wide Web, in part, as "comparable, from the readers' viewpoint, to . . . a vast library"); *see also State by Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715,

---

The complaint alleges 87,000 defibrillators were implanted after Medtronic knew of potentially lethal defects before it decided to inform consumers.  Medtronic's alleged misrepresentations and omissions were made to the public at large and not disclosed to the FDA, an institution charged with protecting the public.")

[9] When, however, the misrepresentations are made to the plaintiff only, the public benefit requirement is not satisfied.  *See, e.g., Tyler Holdings, Inc. v. JJT, LLC,* 2008 WL 5136443*,* at *8 (Minn. Ct. App. 2008) (in an action involving two condominium units, Court found no public benefit where "the alleged statement on which appellants' claims are based were communicated, if at all, solely to appellants; they were not communicated on a broader scale, such as through mass media."); *Evangelical Lutheran Church in America Board of Pensions v. Spherion Pacific Workforce LLC,* No. CIV. 01-4791 (ADM/AJB), 2005 WL 1041487, at *4 (D. Minn. May 4, 2005) (where the plaintiff asserted a CFA claim based on a failed computer-consulting agreement, Court found no public benefit where any relief would inure to the plaintiff's benefit only, and "there is no allegation that the representations made to Evangelical were made to the public at large"); *Davis v. U.S. Bancorp.*, 383 F.3d 761, 768 (8th Cir. 2004) (the plaintiff "can complain only about her individual experience with U.S. Bank, and she has not presented evidence that misrepresentations were made to the public at large.")

719 (Minn. Ct. App. 1997) (observing that an internet website "can be viewed as an 'advertisement by which [a corporation] distributes its pictoral images throughout the United States'").[10]  These misleading statements were not made in isolated instances or to the Plaintiffs only, but rather, to virtually every public consumer who purchased a Symantec product over the internet.    *See*, Compl. at 19-22.   Thus, Defendants' statements are precisely the type of communications disseminated to the "public at large" that implicate a public benefit remediable under the Private AG Act.  *See supra* at 11-13.

2. **Plaintiffs are Seeking Broad Relief Not Just for Themselves, But for Thousands -- if not Millions -- of Persons Deceived by Defendants' Deceptive Communications**.

This is not a personal injury action or individual business dispute where Plaintiffs are seeking damages exclusively for themselves.  Nor is this the proverbial "dog bite" case where "artful counsel" are claiming some theoretical or metaphysical public benefit that may indirectly be derived from prosecution of their claims.  *See supra* at 10.  To the contrary, Plaintiffs are seeking relief for all persons and entities that were defrauded by Defendants' allegedly misleading and deceptive conduct.  Indeed, it is the very intended purpose and objective of this action to provide relief for the multitudes of consumers that were defrauded by the wrongful practices complained of.  Accordingly, the global and comprehensive relief sought in this proceeding demonstrates that Plaintiffs' claims do, in fact, benefit the public, not just themselves.

---

[10] The Minnesota Attorney General's office has long recognized the public nature of the internet and the need for consumers to "be aware of potentially fraudulent practices they may encounter on the web."  *See* "Online Shopping - From the Office of the Minnesota Attorney General Lori Swanson," attached to the Riebel Declaration as Exhibit 3.

Despite overwhelming evidence that the broad scale of Defendants' alleged misrepresentations over the internet and the comprehensive relief sought for consumers nationwide exemplifies the public nature of this litigation, Digital River blithely asserts that Plaintiffs' "cause of action does not benefit the public . . ." Digital River Mem. at 6. According to Digital River, a public benefit is lacking in this case "because any monetary relief obtained would inure only to the benefit of Plaintiffs, not the public at large." *Id*. at 7. This assertion lacks any record or other support and is directly contradicted by the allegations of the Amended Complaint, which make clear that the relief sought in this case – even if limited exclusively to damages (which it is not) – is intended to benefit the thousands of persons defrauded by Defendants' conduct, not just the individual Plaintiffs. *See* Compl., ¶ 10. Indeed, this objective is not a collateral or incidental byproduct of the litigation; rather it was – and remains – the principal purpose underlying Plaintiffs' claims for relief on behalf of defrauded consumers.

In addition, Digital River fails to consider the undisputed Minnesota authorities that have found a public benefit even where actions seek exclusively monetary recoveries on behalf of a large group of defrauded consumers. *See supra* at 12-13. Instead, Digital River relies on inapposite cases that involved a "'finite group' of potential and existing investors" (*Cummings v. Paramount Partners*, LP, 715 F. Supp. 2d 880, 910 (D. Minn. 2010) and one-on-one transactions that took place exclusively between the plaintiff and the defendant. *See, e.g., Behrens*, 228 F. Supp. 2d at 966 (involving sale of a vaccine); *Evangelical Lutheran Church in America Board of Pensions*, 2005 WL 1041487, at *1

(involving a computer consulting services agreement); and *Zutz v. Case Corp.*, 2003 WL 22848943, at *1 (D. Minn. 2003) (involving sale of an air drill).   These cases could not be more dissimilar to the deceptive acts challenged here, where Defendants disseminated deceptive and standardized communications to consumers throughout the country over an indisputably public medium for a period of years.

 3. **Plaintiffs Have Already Secured a Valuable Public Benefit Through This Litigation**.

The public nature of this proceeding is further exemplified by Symantec's removal of the deceptive communications regarding Download Insurance from its internet website.   While those communications had appeared for years on websites hosted by Digital River (and, more recently, Symantec), they promptly disappeared after this lawsuit was initiated.   As a result, consumers nationwide will no longer be fraudulently induced to pay for a product that provides them with absolutely no value or utility.   The fact that important public benefits have already been achieved from the initiation of this action provides additional corroboration of the public nature and objectives of this proceeding.

 4. **Although Unnecessary to Demonstrate a Public Benefit, Plaintiffs Seek Additional Declaratory Relief Through this Litigation**.

Although pursuit of declaratory relief is unnecessary to demonstrate a public benefit, and although Plaintiffs have already secured important public benefits through commencement of this action, Plaintiffs seek additional declaratory relief on behalf of the public at large, including a declaration that Defendants be prohibited from implementing their Download Insurance scheme in the future.   Even if no declaratory relief was sought

in this action, moreover, Plaintiffs' pursuit of damages on behalf of a broad class of persons is, of itself, sufficient evidence of a public benefit under Minnesota law. *See supra* at 11-13

Digital River also contends that "Plaintiffs cannot claim that the public already benefitted from this lawsuit because Digital River stopped selling Norton Products with Extended Download Service in July 2010." Digital River Mem. at 7. This assertion fails for several reasons. To begin with, Digital River ignores the uncontradicted line of authorities that declaratory relief is <u>not</u> a condition to finding a public benefit, and that pursuit of monetary damages provides a public benefit when, as here, it is sought on behalf of a broad number of affected consumers. *See supra* at 10-11. Thus, the fact that Digital River stopped selling Download Insurance on Symantec's website a year ago does not undermine a finding that the recovery of monetary damages from Digital River to compensate defrauded consumers is, of itself, a public benefit remediable under the Private AG fact.

In addition, Digital River ignores the fact that although it stopped selling Norton Products with Download Insurance in July 2010, Symantec continued the practice on its own website until Plaintiffs filed this lawsuit, when the website communications were terminated. *See*   Compl. ¶ 8. Clearly, an action that seeks, and ultimately secures, benefits for the public does not suddenly lose its public nature – and thereby immunize a defendant from liability for damages under the CFA – once those public benefits are realized. To the contrary, Minnesota courts have made clear that even when the alleged misconduct has voluntarily ended or been halted, the public nature of a lawsuit is not

suddenly eviscerated and the plaintiff precluded from seeking damages under the Private AG Act for affected consumers. *See supra* at 11.   Indeed, a contrary result would be fundamentally inconsistent with the Minnesota Supreme Court's admonition that the CFA should be "liberally construed in favor of protecting consumers." *Ly*, 615 N.W.2d at 308.

Given the form and pervasiveness of Defendants' internet misrepresentations and the broad monetary and declaratory relief sought on behalf of consumers nationwide, this action has served – and will continue to serve – the public at large.   For the foregoing reasons, Plaintiffs respectfully submit that Digital River's motion to dismiss the Third Cause of Action should be denied in all respects.

## II.   PLAINTIFFS HAVE ADEQUATELY PLEADED A CLAIM FOR UNJUST ENRICHMENT.

An action for unjust enrichment may be founded upon failure of consideration, fraud, or mistake, or "situations where it would be morally wrong for one party to enrich himself at the expense of another." *Anderson v. DeLisle,* 352 N.W.2d 794, 796 (Minn. Ct. App. 1984) (citations omitted).   Under Minnesota law, "the term 'unjust enrichment' is used in the sense that the benefit has been gained 'illegally or unlawfully.'" *First National Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn. 1981).

Here, Plaintiffs' unjust enrichment cause of action clearly states a claim for relief under Minnesota law.   As described in the Amended Complaint, Digital River sold consumers a purported service over the internet that had no value or utility; created a website with misleading disclosures about this supposed "insurance" to fraudulently

induce people to pay for an unneeded "service"; and pocketed millions of dollars from consumers in return for no consideration. *See* Compl. ¶¶ 3-5, 15. Under any reasonable construction of the terms, Digital River's conduct was "illegal" and "unlawful," and it would be "morally wrong" to allow Digital River to keep the monies it generated from the scheme.

Unsurprisingly, Digital River does <u>not</u> attempt to characterize its receipt of millions of dollars for an unneeded service as lawful and morally defensible. Instead, Digital River contends that because the CFA and FSAA claims in the Amended Complaint should be dismissed, Plaintiffs are "without a basis" to characterize Digital River's conduct as illegal and unlawful. *See* Digital River Mem. at 9.

This argument completely ignores the basis upon which Digital River seeks dismissal of Plaintiffs' CFA and FSAA claims. According to its opening brief, Digital River does <u>not</u> assert that Plaintiffs' Third Cause of Action should be dismissed because, as a substantive matter, the Amended Complaint fails to adequately allege that Digital River's conduct constituted deceptive business practices under the CFA or false advertising under the FSAA. *See* Digital River Mem. at 4-8. Instead, Digital River's <u>sole</u> argument in seeking dismissal of the third claim is that Plaintiffs purportedly "fail to allege facts demonstrating that the public will benefit from this cause of action." *Id*. at 8.

For the multiple reasons discussed above, Digital River's "public benefit" argument is meritless and fails as a matter of law. However, even assuming Digital River persuades the Court that a public benefit underlying Plaintiffs' claims is lacking, that

finding would <u>not</u> constitute a determination that Digital River's conduct in selling useless Download Insurance was lawful and legal, only that the public benefit requirement of the Private AG Act was not adequately demonstrated.  Thus, the Court would be free to conclude in that circumstance that, although Plaintiffs may not be able to proceed with a claim under the Private AG Act (a finding Plaintiffs respectfully believe is contrary to law), they can still show Digital River's "illegal" and "unlawful" behavior for purposes of establishing a claim for unjust enrichment.  Accordingly, the premise underlying Digital River's argument for dismissal of Plaintiffs' unjust enrichment claim is entirely unfounded.

Digital River also asserts that Plaintiffs' unjust enrichment claim should be dismissed because "Plaintiffs fail to allege that no adequate legal remedy exists, nor is that apparent on the face of their Complaint."  Digital River Mem. at 9.  This argument fails as well.  Self-evidently, if Plaintiffs are precluded from asserting claims under the Private AG Act, they will have no adequately remedy at law and must rely on their equitable claim for unjust enrichment.  That is why Federal Rule 8 permits a party to plead claims in the alternative.  *See* Fed. R. Civ. P. 8(d)(2) (a party may "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")  Accordingly, Minnesota courts have routinely rejected arguments that an unjust-enrichment claim should be dismissed because there is an adequate remedy at law.  *See, e.g., Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009) ("Pacific's argument that an unjust enrichment claim is barred because plaintiff has an adequate remedy at law is unavailing.  As already

discussed, at this stage in the litigation, plaintiff is permitted to pursue alternative theories that would provide remedies at law and equity"); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 828 (D. Minn. 2010) ("The Court will permit simultaneous pleading of the breach of warranty and unjust enrichment claims on the grounds that, under Federal Rule of Civil Procedure 8(d), a party is permitted to plead in the alternative.")

As these authorities demonstrate, an unjust enrichment claim may be pleaded in the alternative under Fed. R. Civ. P. 8(d) and is not subject to dismissal because, in the defendants' view, there is an adequate remedy at law. For the foregoing reasons, Digital River's motion to dismiss Plaintiffs' unjust enrichment claim should be denied in all respects.

## III.   PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR DECLARATORY RELIEF.

In their Fourth Cause of Action, Plaintiffs seek declaratory relief under 28 U.S.C. § 2201 to prohibit Defendants from reinstituting the Download Insurance scheme in the future. *See*   Compl., ¶ 72.  "Any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).    The Court need only find that an actual controversy exists between the parties,  *Ferrington* v. *McAfee, Inc.,* No. 10-cv-01455-LMK, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010), but Digital River argues that Plaintiffs have failed to identify a "likelihood of future harm."  Digital River Mem. at 10.  Digital River ignores the fact that a real threat exists that unlawful acts and improper conduct may occur at some future time.

As the Court observed in *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 2d 1282, 1296 (D. Minn. 1985):

> District Courts have discretion to model orders to fit the exigencies of the particular case and the power to enjoin related unlawful acts which may be fairly anticipated from defendants' past conduct.

*See also Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. App. 1st Dist. 2000) (emphasis added) (recognizing that defrauded consumers may seek declaratory and injunctive relief when the "violation has occurred, is now occurring, or is likely to occur in the future"); *cf. Kirckof v. Brown*, No. Civ. 01-476, 2002 WL 31718394, at *6 (D. Minn. Nov. 27, 2002) (finding declaratory relief unnecessary in contract action where no injunction sought and no threat of future continuing harm existed).  Indeed, Digital River disclosed in its most recent Form 10-K filing with the SEC that it '[p]rovides customers with various proprietary software backup services. We recognize revenue for these backup services based upon historical usage within the contract period of the digital backup services when this information is available."  Riebel Decl., Ex. 1 at 35.  In other words, Digital River is still offering its software backup "services" in the regular course of their business to date.

Digital River does not dispute that courts may grant declaratory relief to prevent parties from committing deceptive business practices in the future.  Instead, it erroneously describes Plaintiffs' Amended Complaint as challenging exclusively "past conduct" and "past wrongs" for which declaratory relief is supposedly unavailable. Digital River Mem. at 10, 11.  However, Digital River cites not a single allegation in the Amended Complaint supporting this myopic interpretation of Plaintiffs' allegations.  To

442347.1

the contrary, given that Symantec only eradicated the Download Insurance charges after this action was commenced, there is no assurance – and Defendants have certainly not provided any – that this practice will not be reinstituted in the future.  *See FTC,* 612 F. Supp. 2d at 1296 ("Even if the defendants have altered some of their deceptive practices, injunctive relief is still appropriate when there is a 'cognizable danger of recurrent violation.'") (citation omitted).[11]  On a pleading motion, particularly without the benefit of any discovery, no more is required.

Digital River further contends that Plaintiffs "do not articulate what statute or other legal theory forms the basis of their request for declaratory judgment, but rather rest on the bare assertion that '[t]here exists an actual controversy.'"  *See* Digital River Mem. at 9, 10.   This contention is also meritless.  In interposing their Fourth Cause of Action for declaratory relief, Plaintiffs expressly incorporated by reference all of the Amended Complaint's substantive allegations concerning Defendants' Download Insurance scheme.   Compl., ¶ 70.  These allegations describe in copious detail the nature of the scheme; the challenged misrepresentations and omissions made by Defendants; and the losses sustained by Plaintiffs and other members of the Class.  *Id.* ¶¶ 2-30.  The Fourth Cause of Action also expressly alleges that declaratory relief is appropriate "[b]y virtue of Defendants' deceptive and unlawful business practices."  *Id.* ¶ 72.[12]

---

[11] As shown above, Plaintiffs are not seeking a declaration from this Court as a predicate for subsequent monetary damages as Digital River claims; rather, they aim to prevent Digital River from continuing the deceptive practices alleged in the Amended Complaint. Digital River Mem. at 11.

[12] Plaintiffs' allegations stand in stark contrast to the claims asserted in *Glover v. State*

In light of these allegations, it is not credible for Digital River to assert that Plaintiffs have failed to articulate the "legal theory" that forms the basis of their Fourth Cause of Action for declaratory relief.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully submit that Digital River's motion to dismiss the Fourth Cause of Action should be denied in all respects.

---

*Farm Fire & Cas. Co.,* where the plaintiff brought a declaratory judgment action in contravention of a state law that limited available remedies in such insurance-related disagreements).

Dated:  June 6, 2011                    Respectfully submitted,


                                        **s/ Karen Hanson Riebel**
                                        Karen Hanson Riebel (#219770)
                                        LOCKRIDGE GRINDAL NAUEN PLLP
                                        100 Washington Avenue South
                                        Suite 2200
                                        Minneapolis, MN  55401
                                        Telephone: 612-596-4097
                                        Facsimile: 612-339-0981
                                        khriebel@locklaw.com

                                        Andrew N. Friedman
                                        Victoria S. Nugent
                                        Whitney R. Case
                                        COHEN MILSTEIN SELLERS & TOLL PLLC
                                        1100 New York Avenue, N.W.
                                        Suite 500, West Tower
                                        Washington, DC  20005
                                        Telephone:  (202) 408-4600
                                        Facsimile:   (202) 408-4699
                                        afriedman@cohenmilstein.com
                                        wcase@cohenmilstein.com

                                        Richard Wentz
                                        Jean Wentz
                                        THE WENTZ LAW FIRM
                                        2955 East Hillcrest Drive
                                        Suite 123
                                        Thousand Oaks, CA  91362
                                        Telephone: (805) 374-0060
                                        Facsimile: (888) 855-8124
                                        rick.wentz@gmail.com
                                        jean.wentz@gmail.com

Lee S. Shalov
McLaughlin & Stern LLP
260 Madison Ave.
New York, NY 10016
Tel:  (646) 278-4298
Cell: (516) 359-1825
Fax:  (212) 448-0066
lshalov@mclaughlinstern.com