## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DEVI KHODAY and
DANISE TOWNSEND,

Civil No. 11-0180 (JRT/TNL)

Plaintiffs,

v.

**MEMORANDUM OPINION AND
ORDER ON DEFENDANTS'
MOTIONS TO DISMISS**

SYMANTEC CORP. and
DIGITAL RIVER, INC.,

Defendants.

Andrew N. Friedman, **COHEN MILSTEIN SELLERS & TOLL PLLC**, 1100 New York Avenue Northwest, Suite 500 West Tower, Washington, DC 20005; Karen Hanson Riebel, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; and Lee S. Shalov, **MCLAUGHLIN & STERN, LLP**, 260 Madison Avenue, 19th Floor, New York, NY 10016, for plaintiffs.

Patrick E. Gibbs, **LATHAM & WATKINS, LLP**, 140 Scott Drive, Menlo Park, CA 94025; and Steve W. Gaskins, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South 7th Street, Suite 2900, Minneapolis, MN 55402, for defendant Symantec Corp.

Amy Van Gelder and Charles Smith, **SKADDEN, ARPS, SLATE, MEAGHER & FLOM**, 155 North Wacker Drive, Chicago, IL 60606, for defendant Digital River, Inc.

Plaintiffs Devi Khoday ("Khoday") and Danise Townsend ("Townsend") seek to bring this action on behalf of a class against Symantec Corp. ("Symantec") and Digital River, Inc. ("Digital River"). Plaintiffs accuse Symantec and Digital River of selling an unnecessary product through the use of false and misleading information. Against Symantec, Plaintiffs allege unjust enrichment and bring Consumer Legal Remedies Act

and Unfair Competition Law claims under California law.[1]   Against Digital River,
Plaintiffs allege unjust enrichment and bring Consumer Fraud Act and False Statement in
Advertising Act claims under Minnesota law.[2]   Plaintiffs also seek a declaratory
judgment that Symantec and Digital River's practices with respect to the Download
Product were unlawful.   Symantec and Digital River have separately filed motions to
dismiss.   The Court will grant Defendants' motions to dismiss Plaintiffs' declaratory
judgment claims because Plaintiffs have alleged more appropriate remedies.   The Court
will deny the motions to dismiss in all other respects because Plaintiffs have sufficiently
alleged that Defendants misled consumers by providing deceptive information.

## BACKGROUND

### I.   FACTUAL BACKGROUND[3]

Symantec is among the world's largest dedicated security technology companies.
Symantec owns the Norton franchise; it sells Norton security software products and
services ("Norton") on its websites, www.symantec.com and www.norton.com.   (Am.
Compl. ¶ 2, April 14, 2011, Docket No. 40.)  Symantec sold Norton directly to customers

---

[1] Plaintiffs bring claims under California law against Symantec because Symantec's
principal place of business is in California and it allegedly approved and executed acts of
deception in that state.

[2] Plaintiffs bring claims under Minnesota law against Digital River because Digital
River's principal place of business is in Minnesota and it allegedly approved and executed acts
of deception in that state.

[3] The Court sets forth the facts alleged by Plaintiffs, pursuant to the standard in Federal
Rule of Civil Procedure 12(b)(6).

from its own e-commerce internet platform in 2009 and 2010. (*Id.* ¶ 6.) Prior to that time, Symantec contracted with Digital River to run its e-commerce internet platform. (*Id.* ¶ 6.)

Customers who purchased Norton were granted a license to use the software for a period of a year or more, and they could load or re-load the software onto up to three computers while the license was current. (*Id.* ¶ 5.) Neither Symantec nor Digital River contained information about this license on their websites or in any other publications. (*Id.* ¶ 5.)

When consumers purchased Norton online, their shopping cart automatically included "Norton Download Insurance," as it was called on Symantec's website, or "Extended Download Services," as it was called on Digital River's website ("the Download Product"). (*Id.* ¶¶ 4, 20-21.) If the consumer wanted to determine the purpose of the Download Product, the consumer could click on a link labeled "What's this?" (*Id.* ¶ 20.) On Digital River's website, consumers saw the following message after clicking this link:

> **When you purchase downloadable software from Symantec's online store, Digital River, Symantec's authorized online retailer, automatically grants you 60 days from the date of purchase to download your software order.**
>
> If you add Extended Download Service to your downloadable software purchase order, Digital River will keep a backup of all the software on your order for ONE YEAR. If you need to re-download your software, or access your Serial Key; it will be available 24 hours a day, 7 days a week for ONE YEAR from the date of purchase by going to www.symantecstore.com/orderlookup.

(*Id.* ¶ 21.)

When consumer followed this link on July 1, 2010 on Symantec's website, they saw the following pop-up:

**Norton Download Insurance**

When you purchase downloadable software from the Norton Store, you automatically receive the ability to download your software for 60 days from the date of purchase. Norton Download Insurance extends the time you can access your downloadable software by providing you the freedom and flexibility to download or re-download your software for one year. If you need to re-download your software it will be available 24 hours a day, 7 days a week for one year from the date of purchase from your Norton Account.  Just log into your Norton Account at www.mynortonaccount.com, look up your order and click on the link provided.

**Gain flexibility and peace of mind!**

If you decide to replace your PC or if your PC has problems, is damaged or stolen and you need to reinstall your software, with Norton Download Insurance you have the peace of mind of knowing you can re-download your software at anytime for one year. Norton Download Insurance may be refunded within 60 days from your date of purchase. Applicable taxes are refunded on eligible returns.

(*Id.* ¶ 20.)

Customers were required to affirmatively remove the Download Product from their shopping cart prior to purchase if they did not want it.  (*Id.* ¶ 5.)  The price for the Download Product was between $5.99 and $10.99.  (*Id.* ¶ 19.)  After Plaintiffs filed their Complaint, Symantec stopped promoting and selling the Download Product.  (*Id.* ¶ 8.)

Plaintiffs seek a class of "all persons in the United States who purchased Extended Download Service or Norton Download Service," with a few exceptions.  (*Id.* ¶¶ 10, 31-32.)  The two named Plaintiffs, Khoday and Townsend, each purchased the Download Product.  (*Id.* ¶¶ 11-12, 27-30.)

Khoday is a citizen of California who purchased the Download Product directly from Symantec without the knowledge that she could re-download Norton during her license period without it. (*Id.* ¶ 11.) She clicked on the "What's this?" link and read the text that appeared on Symantec's website. (*Id.* ¶ 27.) Khoday claims that she would not have purchased the Download Product if she knew that she could download the software for a year without it. (*Id.* ¶ 28.)

Townsend is a citizen of Florida who purchased the Download Product from Digital River without the knowledge that she could re-download Norton during her license period without it. (*Id.* ¶ 12.) Before purchasing the Download Product, Townsend called the sales support number listed on Digital River's website and spoke to a sales representative. (*Id.* ¶ 29.) The sales representative used a script and verbally confirmed the substance of the "What's this?" link on Digital River's website. (*Id.* ¶ 30.) The sales representative told Townsend that purchasing the software and the Download Product, unlike purchasing a CD, would allow her to re-download Norton for free. (*Id.* ¶ 30.) Townsend was not told that she could re-download the software without purchasing the Download Product. If she had been told this information, she claims that she would not have purchased the Download Product. (*Id.* ¶ 30.)

## II.    PURPOSE OF DOWNLOAD PRODUCT

Symantec claims the Download Product has two main benefits. First, Symantec contends that customers gained the legal and contractual right to download their software more than sixty days after purchase. (Def. Symantec, Corp.'s Mem. Supp Mot. to

Dismiss at 7, 12, May 16, 2011, Docket No. 57.)  According to Symantec, this benefit was genuine because Symantec was not otherwise required to allow such downloads, even if they were offered as a matter of course.  (*Id.* at 12.)  Second, Symantec claims that the Download Product made it easier to download Norton.  (*Id.*)  Similarly, Digital River maintains that the Download Product benefited its customers because it allowed them to return to Digital River to re-download Norton, rather than "casting about the Internet and digging through email archives to try to find all the pieces necessary to reinstall Norton."  (Def. Digital River, Inc.'s Mem. Supp. Mot. to Dismiss at 2, May 16, 2011, Docket No. 52.)[4]

Plaintiffs dispute that the right to download Norton for a year was of value, alleging that Symantec never intended to stop offering its customers free downloads for one year after purchase.  (Pl.'s Mem. Opp. Mot. to Dismiss at 1, 3-4, June 6, 2011, Docket No. 60.)  Plaintiffs allege that Defendants intentionally led customers to believe that they needed to purchase the Download Product to re-download their software beyond sixty days through pop-up descriptions or advertisements, scripted sales communications, and the auto-population of the "Check Out screen" with the Download Product.  (Am. Compl. ¶ 24.)  According to Plaintiffs, class members were deceived and would not have purchased the Download Product if they knew that it was optional and provided no benefit.  (*Id.* ¶¶ 5, 25-26.)

---

[4] It is unclear from the record how and to what degree the Download Product affected the customers' ease in re-downloading Norton.

## ANALYSIS

## I.    STANDARD OF REVIEW

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g., Turner v. Holbrook,* 278 F.3d 754, 757 (8th Cir. 2002).  To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . .'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In short, a plaintiff must state "a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

The claims alleged in this case sound in fraud and are thus subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).[5]  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The circumstances that must be stated "include such matters as the time, place and contents of false representations, as well as

---

[5]  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 944 (D. Minn. 2009) ("Plaintiff brings claims under Minnesota Statutes §§ 325D.44, 325F.67, and 325F.69 directed to consumer fraud, unfair trade practices, and deceptive advertising.  The Court is well aware such claims must be pleaded with particularity, as required by Rule 9(b)."); *United States v. Henderson*, 2004 WL 540278, at *2 (D. Minn. Mar. 16, 2004) ("The Court will apply the heightened pleading standard of Rule 9(b) to the unjust enrichment claim, because allegations of fraud underlie the unjust enrichment claim."). *But see Morgan v. AT&T Wireless Servs., Inc.,* 99 Cal. Rptr. 3d 768, 785-86 (Cal. Ct. App. 2009) ("[Defendant's] argument fails to recognize the distinction between common law fraud, which requires allegations of actual falsity and reasonable reliance pleaded with specificity, and the fraudulent prong of the UCL, which does not.").

the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (internal citation omitted).

## II.   CLAIMS AGAINST SYMANTEC

The Court will first discuss Symantec's motion to dismiss.  The Court finds that Plaintiffs have alleged sufficient misrepresentations to sustain their Consumers Legal Remedies Act, Unfair Competition Law, and unjust enrichment claims under California law.  The Court will dismiss Plaintiffs' declaratory judgment claim against Symantec, however, because Plaintiffs have not provided a sufficient justification for this claim in light of their other theories of recovery.

### A.   Consumers Legal Remedies Act ("CLRA")

Symantec seeks dismissal of Plaintiffs' Consumers Legal Remedies Act ("CLRA") claims.  *See* Cal. Civ. Code §§ 1770(a)(5), 1770(a)(9), 1770(a)(15).  The CLRA prohibits certain "unfair methods of competition" and "unfair or deceptive acts or practices" that are intended to or do result in "the sale or lease of goods or services to any consumer."  *Id.* § 1770(a).  "Goods" are "tangible chattels bought or leased for use primarily for personal, family, or household purposes . . . ."  *Id.* § 1761(a).  "Services" are "work, labor, and services for other than a commercial or business use, including

services furnished in connection with the sale or repair of goods." *Id.* § 1761(b).  The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

It is premature to determine that the Download Product is not a "service" falling under the CLRA.  Plaintiffs have alleged sufficient facts to suggest that (1) the Download Product may be a "service" within the statutory definition of the CLRA; and (2) the Download Product may not be excluded from coverage under the CLRA as an "ancillary service."

### 1.   Download Product as Service

The Download Product will fall under the CLRA if it qualifies as a "service."[6] The statutory definition of "services" is circular because it defines this term as "work, labor, and **services** . . . ."  Cal. Civ. Code § 1761(b) (emphasis added).  None of the authority cited by the parties addresses this definition's circular nature or the plain meaning of the term "services."[7]

---

[6] The Plaintiffs have not disputed, for the purposes of this motion, that software is not a "good" under the CLRA.  Accordingly, the Court declines to opine on this issue at this stage.

[7] "If the [statutory] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." *Bruns v. E-Commerce Exchange, Inc.*, 248 P.3d 1185, 1190 (Cal. 2011).  The only case cited by the parties that discusses the nature of "services" in any detail primarily focuses on matters specific to insurance.  *Fairbanks v. Superior Court*, 205 P.3d 201, 203-06 (Cal. 2009).

The few courts that have addressed whether software qualifies as a "service" have come to conflicting interpretations. A United States District Court in California determined that "software generally is not a service for purposes of the CLRA." *Ferrington v. McAfee, Inc.*, No. 10-CV-1455 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010). However, the court did not analyze this assertion in any detail and left open the possibility that software could constitute a service. *See id.* There is also case law in California supporting the application of the CLRA to electronic services. *See, e.g., Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1109-13 (N.D. Cal. 2010) (applying the CLRA to AOL's internet services, including alleged privacy and security protections); *Morgan v. AT&T Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768, 787 (Cal. Ct. App. 2009) (holding that the CLRA applied to the sale of a mobile phone and wireless telephone service contract).

The Court finds that, applying the plain meaning of the term "services," the Download Product may qualify as a "service" under the CLRA. The ability to re-download Norton could be understood as a delivery service that Symantec provides for an additional price. (*See* Am. Compl. ¶ 4.) Indeed, Digital River described the Download Product as "a service that made retrieval of Norton software simpler and more convenient for its customers." (Def. Digital River, Inc.'s Mem. Supp. Mot. to Dismiss at 2, May 16, 2011, Docket No. 53.) Particularly because the Court must construe the CLRA broadly, the Court finds that the Download Product may provide the kind of service intended to fall within the statute's parameters. This issue can be better addressed

after the parties have presented additional information to the Court about the nature of the Download Product.[8]

### 2.   Ancillary Services

The Download Product will not fall under the CLRA if it is "ancillary" to a product that is neither a good nor a service. *Fairbanks v. Superior Court*, 205 P.3d 201, 206 (Cal. 2009). The California Supreme Court expressed concern that extending coverage to ancillary services would "defeat the apparent legislative intent in limiting the definition 'goods' to include only 'tangible chattels.'" *Id.* Ancillary products include "additional customer services related to the maintenance, value, use, redemption, resale, or repayment of" products not covered under the CLRA. *Id.* Thus, the Download Product is excluded from coverage under the CLRA if it is ancillary to Norton and if Norton does not fall under the CLRA.

For two reasons, Plaintiffs have sufficiently alleged that the Download Product is not an "ancillary service" excluded from coverage. First, Norton may be a "service" under the CLRA. Second, Plaintiffs allege the Download Product is sufficiently distinct from Norton such that it is not "ancillary."

---

[8] For example, the Court would benefit from an understanding of exactly how the consumer accessed and used the product, the customer services provided along with the product, other representations made about the product, and how the consumer's experience on the website varied if they did not purchase the product, among other information.

### a.      Norton as Service

First, Norton may qualify as a "service" under the CLRA.[9]  *See AOL*, 719 F. Supp.
2d at 1109-13 (applying the CLRA to AOL's security protections).   Norton scans a
computer for viruses.   Accordingly, it may deliver something more akin to a "service"
than other computer programs by providing continuous security, regular updates, and
maintenance of a user's computer.[10]

### b.      Download Product as Separate Service

Second, even if Norton is not a service, the fact that the Download Product was
purchased separately and was apparently not necessary for Norton's functionality weighs
in favor of finding that it is not ancillary to Norton.  *Cf. Young v. Wells Fargo & Co.*, 671
F. Supp. 2d, 1006, 1026 (S.D. Iowa) (noting the importance of whether the product was
purchased independently when deciding whether a service was ancillary).  The Download
Product was not included in the purchase of Norton; rather, the customer was required to
independently purchase the Download Product.  In addition, the Download Product may
not be the type of service that a consumer would need to realize the benefits of Norton or
expect to accompany Norton.  *Cf. Fairbanks*, 205 P.3d at 206 (holding that the labor of
insurance agents is an ancillary service to insurance policies).  Because the Court must

---

[9] Symantec relies heavily on a United States District Court decision, discussed above, to
argue that "software **generally** is not a service for the purpose of the CLRA."  *See Ferrington*,
2010 WL 3910169, at *19 (emphasis added).  This decision, however, provides little guidance
regarding when software might qualify as a service and is not controlling on this Court.

[10] The Court would benefit from more information about Norton and how its
functionality compares to other software before deciding whether it qualifies as a "service."

liberally construe the CLRA, the Court finds that the Download Product could be the type of service that was intended to be covered by the statute.[11]

## B.       Unfair Competition Law ("UCL")

Symantec also seeks dismissal of Plaintiffs' claims under the California Business and Professions Code, also referred to as the California Unfair Competition Law ("UCL").   The UCL prohibits "any unlawful, unfair, **or** fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200 (emphasis added).  "Each prong of the UCL is a separate and distinct theory of liability."  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  The California legislature "framed the UCL's substantive provisions in 'broad, sweeping language' . . . and provided courts with broad equitable powers to remedy violations."  *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 882 (Cal. 2011) (internal citations and quotation marks omitted).  The Court finds that Symantec has alleged facts sufficient to establish Symantec's practices were fraudulent, unfair, and unlawful.  The Court will discuss each of these prongs in turn.

### 1.       Fraudulent Business Practice

The UCL prohibits fraudulent business practices, which are practices "that [are] likely to deceive members of the public."  *Morgan*, 99 Cal. Rptr. 3d at 785.  "Deceit" is defined under California law as "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of

---

[11] For the reasons outlined in Part II(B), Plaintiffs have also sufficiently alleged "unfair or deceptive acts or practices" under the CLRA.

communication of that fact." Cal. Civ. Code § 1710(3). "California has adopted a reasonable consumer standard for evaluating UCL claims." *Ferrington*, 2010 WL 3910169, at *9.

The Court finds that Plaintiffs have raised plausible allegations of fraudulent conduct for two reasons. First, Plaintiffs have alleged an affirmative misrepresentation by Symantec. Symantec's website states that the Download Product "**extends the time you can access your downloadable software by providing you the freedom and flexibility to download or re-download your software for one year.**" (Am. Compl. ¶ 20 (emphasis added).) If the time that customers could access Norton was not, in fact, extended by purchasing the Download Product, this statement is an affirmative misrepresentation. *See McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 239-40 (Cal. Ct. App. 2006).

Second, even if Symantec's statements were true, they may have been misleading, creating a duty to disclose. *See id.* ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" the UCL); *see Randi W. v. Muroc Joint Unified Sch. Dist.*, 929 P.2d 582, 592 (Cal. 1996) (holding that a party is "obliged to disclose all other facts which 'materially qualify' the limited facts disclosed."). The facts suggest that Symantec may have deceived members of the public into believing that the Download Product was necessary to re-download Norton after sixty days.

Symantec analogizes this case to *Buller v. Sutter Health*, where the court held that it was legal under the UCL for a hospital to offer discretionary discounts to its customers without disclosing the availability of such discounts. 160 Cal. App. 4th 981, 991-92 (Cal.

Ct. App. 2008).  Plaintiffs do not allege, however, that Symantec gave a discount to some customers.  Rather, Plaintiffs allege that Symantec deceived consumers into affirmatively purchasing a separate product that they did not want or need.  (Am. Compl. ¶ 34(a).) Prohibiting the sale of a product through misrepresentations is at the heart of consumer protection laws, unlike ensuring that companies offer the same discounts to all customers.[12]  Deception under the UCL is a question of fact that courts can rarely resolve on a motion to dismiss, and this case is not an exception.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

### 2.     Unfair Business Practice

There are two tests that California courts use to analyze the "unfair business practice" prong of the UCL.  *Lozano*, 504 F.3d at 736.  Plaintiffs have alleged sufficient facts to establish a claim under either test.

The first line of authority requires a "balancing" test, whereby the harm to the consumer is balanced against the utility of the defendant's practices.  *South Bay Chevrolet v. GM Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).  Under this test, a business practice is unfair if it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.*  Plaintiffs met this test by alleging misstatements, or at least misrepresentations, that

---

[12] "There is a fundamental difference . . . between the practice of artificially inflating the price of a service beyond its actual cost and the practice of voluntarily offering customers discounts on a properly priced service."  *Buller*, 160 Cal. App. 4th at 989.

injured consumers by coercing them into buying an unnecessary product.   (*See* Am. Compl. ¶ 40.)

The other line of authority requires that the unfair business practice be "tethered to a legislatively declared policy or has some actual or threatened impact on competition." *Buller*, 160 Cal. App. 4th at 991.   Plaintiffs met this test by tethering this claim to the CLRA.   (*See* Am. Compl. ¶¶ 47-58.)

### 3.   Unlawful Business Practice

The UCL prohibits engaging in unlawful business practices.   "The UCL permits injured consumers to 'borrow' violations of other laws and treat them as unfair competition that is independently actionable." *Ferrington*, 2010 WL 3910169, at *14.   A practice is unlawful under the UCL if it violates a statutory or judicially made civil or criminal law.   *Id.*   Plaintiffs have sufficiently alleged violations of the CLRA and unjust enrichment, thereby adequately alleging an unlawful business practice.[13]   Because Plaintiffs have established facts sufficient to meet all three prongs of the UCL, the Court will not dismiss Plaintiffs' UCL claim.

### C.   Declaratory Judgment

Symantec seeks dismissal of Plaintiffs' declaratory judgment claim.   The Declaratory Judgment Act provides that in cases of "actual controversy," federal courts "may declare the rights and other legal relations" of "interested part[ies]."   28 U.S.C.

---

[13] Unjust enrichment is discussed in Part II(D).

§ 2201.  *See also* Fed. R. Civ. P. 57.  Plaintiffs seek a declaration that Symantec's practices with respect to the Download Product were unlawful.  (Am. Compl. ¶ 72.)

"Although the availability of alternative remedies is not a bar to declaratory relief, Fed. R. Civ. P. 57, the district court may in its discretion refuse declaratory relief if the alternative remedy is more appropriate."  *Smith v. Metro. Prop. and Liab. Ins. Co.*, 629 F.2d 757, 769 (2d Cir. 1980).  The Court will dismiss Plaintiffs' request for declaratory relief because it is unnecessary; Plaintiffs have already asserted a claim for damages based on the same underlying dispute.[14]  *See Kirckof v. Brown*, No. Civ. 01-476, 2002 WL 31718394, at *6 (D. Minn. Nov. 27, 2002).

### D.  Unjust Enrichment

Symantec seeks dismissal of Plaintiffs' unjust enrichment claim.  The Supreme Court of California has recognized a cause of action based on the theory of unjust enrichment. *Ghirardo v. Antonioli*, 924 P.2d 996, 998 (Cal. 1996) ("The seller in this matter pleaded and proved a cause of action based on a theory of unjust enrichment.").[15]

---

[14] Although Plaintiffs claim to request declaratory relief to prevent Symantec from re-instituting practices similar to that alleged in the complaint, they have not requested injunctive relief.  (*See* Am. Compl. ¶ 72.)  "'A declaratory judgment or decree is one which simply declares the rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done; its distinctive characteristic being that the declaration stands by itself, and no executory process follows as of course; and the action therefor is distinguished from other actions in that it does not seek execution or performance from the defendant or opposing parties.'"  *Gutensohn v. Kansas City S. Ry. Co.*, 140 F.2d 950, 953 (8th Cir. 1944) (quoting 1 Corpus Juris Secundum, Actions, § 18, at 1018).  Thus, Plaintiffs have not shown that declaratory relief would prevent Symantec from engaging in similar practices in the future.

[15] To the extent that some California courts appear to reject claims for unjust enrichment, these decisions improperly focus on semantic disputes over the facial characterization of the

(Footnote continued on next page)

Under California law, "the elements of a claim for unjust enrichment [are] 'receipt of a benefit and the unjust retention of the benefit at the expense of another.'" *Semiconductor Components Indus., L.L.C. v. I2A Techs., Inc.*, No. C10-0603, 2010 WL 3036731 at *3 (N.D. Cal. July 30, 2010) (citing *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008)).   Plaintiffs allege that Symantec knowingly and unjustly retained profits, and that these profits should be disgorged.   Accordingly, this Court finds Plaintiffs adequately pled unjust enrichment.  Unlike a request for declaratory judgment, unjust enrichment is an independent theory of recovery that the Court will not dismiss at this early stage.

## III.   CLAIMS AGAINST DIGITAL RIVER

The Court will now address Digital River's motion to dismiss.  The Court finds that Plaintiffs have alleged sufficient misrepresentations to sustain their Consumer Fraud Act, False Statement in Advertising Act, and unjust enrichment claims under Minnesota law.  As with Symantec, however, the Court will dismiss Plaintiffs' declaratory judgment claim because they have not provided a sufficient justification for this claim in light of their other theories of recovery.

_____

(Footnote continued.)

cause of action.  *See Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (analyzing the apparent conflict in California cases regarding unjust enrichment, and finding that courts denying claims for unjust enrichment improperly focus on a semantic distinction between "unjust enrichment" and "restitution").

A.   **Consumer Fraud Act ("CFA") and False Statement in Advertisement Act ("FSAA")**

Digital River first seeks to dismiss Plaintiffs' Consumer Fraud Act ("CFA") and False Statement in Advertising Act ("FSAA") claims.  *See* Minn. Stat. §§ 325F.67, .69. The CFA provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided [herein].

*Id.* § 325F.69, subd. 1.  The FSAA prohibits any "material assertion, representation, or statement of fact which is untrue, deceptive, or misleading" in advertisements.  *Id.* § 325F.67.

The CFA and FSAA do not contain a private cause of action.  *Wehner v. Linvatech Corp.*, No. 06–CV–1709, 2008 WL 495525, at *3 (D. Minn. Feb. 20, 2008).  Under Minnesota's Private Attorney General Statute ("Private AG Statute"), however, "any person injured by a violation" of the CFA and FAA may file suit and recover damages as well as costs and attorney fees.  Minn. Stat. § 8.31, subd. 3a.  By encouraging defrauded consumers to file suit, the Private AG Statute "advances the legislature's intent to prevent fraudulent representations and deceptive practices with regard to consumer products . . . ."  *Ly v. Nystrom*, 615 N.W.2d 302, 311 (Minn. 2000).  "[T]he CFA is remedial and should be liberally construed in favor of protecting consumers."  *Id.* at 308.  To establish a cause of action under the CFA and FSAA, Plaintiffs must establish (1) a public benefit,

- 19 -

and (2) a misrepresentation sufficient to violate the statutes. Plaintiffs have alleged facts sufficient to fufill both of these elements.

### 1. Public Benefit

To properly plead CFA and FSAA claims, Plaintiffs must have adequately alleged a public benefit. "Since the Private AG Statute grants private citizens the right to act as a 'private' attorney general, the role and duties of the attorney general with respect to enforcing the fraudulent business practices laws must define the limits of the private claimant under the statute." *Id.* at 313. The attorney general is not responsible for protecting "private or individual interests independent of a public purpose." *Id.* Accordingly, the Minnesota Supreme Court concluded that "the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." *Id.* at 314.

In deciding whether there is a public benefit, the following factors are relevant: the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged representation; the kind of relief sought; and whether the alleged misrepresentations are ongoing. *See In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1077-79 (D. Minn. 2010). Digital River argues that the public will not benefit from this action because Digital River stopped selling Norton prior to the initiation of the litigation and because Plaintiffs only seek monetary damages.

The Court finds that Plaintiffs have sufficiently alleged a public benefit because of the size of the audience that Digital River targeted to sell the Download Product.[16]  The Minnesota Supreme Court has determined that plaintiffs can establish a public benefit by challenging misrepresentations made to a significant segment of the public.  *See Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 330 (Minn. 2003) (finding public benefit requirement satisfied where the defendant "made misrepresentations to the public at large by airing a television advertisement" and "made numerous sales and information presentations" to students).  Surely the Minnesota Attorney General's Office would consider challenging deceptive practices conducted over the Internet to the public at large.  *See Ly*, 615 N.W.2d at 313 ("[T]he sweep of the statute can be no broader than the source of its authority – that of the attorney general – whose duties are to protect **public** rights in the interest of the state." (emphasis original)).  Likewise, the Private AG Statute is intended to "stop those who 'rip off a large number of citizens.'"  *See id.* at 314 n.2 (quoting Hearing on H.F. 773, H. Comm. Commerce and Econ. Dev., 68th Minn. Leg., Mar. 30, 1973 (audio tape) (statement of Rep. Sieben)).

---

[16] Plaintiffs have also provided facts suggesting that Digital River's consumer protection violations may be ongoing, but this issue is not decisive to this motion.  *See In re Levaquin Prods. Liab. Litig.,* 752 F. Supp. 2d at 1078.  Digital River's Security and Exchange Commission Form 10-K filing states that Digital River continues to "[p]rovide . . . customers with various proprietary software backup services."  (Decl. of Karen Hanson Riebel, Ex. 1 at 4, June 6, 2011, Docket No. 61.)  Digital River does not dispute that it continues to provide such backup services.  The Court may take judicial notice of this undisputed fact because it is in a public filing.  *See* Fed. R. Evid. 201(b); *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008).  However, it is unclear what these backup services have in common with the backup services that Digital River provided for Symantec, and whether any violations of consumer laws are ongoing.

Plaintiffs have alleged a public benefit even though this action seeks only money damages.  *See In re Nat'l Arbitration Forum Trial Practices Litig.*, 704 F. Supp. 2d 832 (D. Minn. 2010) ("Plaintiffs' continued pursuit of monetary damages for the class . . . has a public benefit"); *Curtis v. Altria Grp., Inc.*, 792 N.W.2d 836, 850 (Minn. Ct. App. 2010) (finding public benefit in an action for money damages).  Money damages may benefit consumers through providing compensation and a deterrent effect, and the plain language of the Private AG Statute allows for this type of recovery.  *See* Minn. Stat. § 8.31, subd. 3a.

### 2.    Misrepresentations

The Court's second consideration in deciding whether to dismiss Plaintiffs' CFA and FSAA claims is whether Plaintiffs have adequately alleged a misrepresentation that may violate these statutes.  *See* Minn. Stat. §§ 325F.67, 325F.69, subd. 1.  Digital River argues that its statements about the Download Product were true, and thus did not violate the CFA or FSAA, because Digital River provided access to Norton for sixty days unless consumers purchased the Download Product.  Plaintiffs allege, however, that Digital River's statements violated the CFA or FSAA because it led consumers to believe that they must purchase the Download Product in order to re-download Norton beyond sixty days.  (*Id.* ¶ 24.)  The Court finds that Plaintiffs' allegations are sufficient to state violations of the CFA and FSAA for three reasons.

First, Plaintiffs have alleged that Digital River omitted material information that naturally affected consumers' conduct.  (*Id.* at 63.)  The CFA and FSAA are "broader

than common law fraud and support omissions as violations" when they are material and naturally affect consumers' conduct.[17]   *See Minnesota ex rel. Hatch v. Fleet Mortg. Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001).   Digital River's website stated that it would "automatically grant" users "60 days from the date of purchase to download [their] software order," and would grant one year of access if the users purchased the Download Product.   (Am. Compl. ¶ 21.)   Digital River's website did not explain that the Download Product's benefit was providing access to Norton on Digital River's website as opposed to Symantec's website.   Plaintiffs suggest that the omission of a material fact – that consumers could access Norton on Symantec's website for a year – may have affected consumers' conduct by causing them to purchase the Download Product.

Second, Plaintiffs have alleged that Digital River was required to "clarify [the] misleading information already disclosed" and did not do so.   *See Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1064 (D. Minn. 2001) (citing *Am. Computer Trust Leasing v. Boerboom Int'l Inc.*, 967 F. 2d 1208, 1211-12 (8th Cir. 1992)).   When a party provides misleading information, it may have the obligation to provide additional information to clarify that misrepresentation.   *See id.*   Plaintiffs have sufficiently alleged that Digital River was required but failed to clarify misleading information that led consumers to

---

[17] *But see Masepohl v. Am. Tobacco Co., Inc.*, 974 F. Supp. 1245, 1250-51, 1254-55 (D. Minn. 1997) (holding that there is no duty to disclose the addictive nature of nicotine where no affirmative statements were made about addiction and there was no fiduciary relationship). The Court declines to follow *Masepohl* because, "[w]hile a duty to disclose may be required by common law fraud/misrepresentation, it is not required for liability under more broadly drafted consumer protection statutes."   *Fleet Mortg. Corp.*, 158 F. Supp. 2d at 967.

believe they could normally access Norton for only sixty days.  (*See* Am. Compl. ¶¶ 22-26.)

Third, Plaintiffs have alleged that Digital River had "'special knowledge' of material facts to which [Plaintiffs did] not have access." *See id.*  This type of special knowledge, if not disclosed, can support a claim under the CFA and FSAA.  *See id.* Plaintiffs have adequately alleged that Digital River knew it misled consumers, and that clarifying information was not available on its website or in other written materials. (*Id.* ¶¶ 5, 24-26.)  Because Plaintiffs have sufficiently alleged misrepresentations and a public benefit, the Court will not dismiss Plaintiffs' CFA or FSAA claims.

### B.      Declaratory Judgment

The Court will dismiss Plaintiffs' declaratory judgment claim against Digital River for the same reasons stated in Part II(C) regarding Symantec.  *See Glover v. State Farm Fire & Cas. Co.*, 984 F.2d 259, 261 (8th Cir. 1993) (holding that an "important factor" in determining whether to grant declaratory judgment relief is whether the plaintiff has another, more appropriate remedy).

### C.      Unjust Enrichment

Digital River further seeks a dismissal of Plaintiffs' unjust enrichment claim.  To establish a claim for unjust enrichment under Minnesota law, a plaintiff must demonstrate "that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."  *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).

"[T]o ensure that unjust enrichment is not used to reward a bad bargain, Minnesota courts require proof that 'a benefit was conferred unknowingly or unwillingly.'" *Holmes v. Torguson*, 41 F.3d 1251, 1256 (8th Cir. 1994) (quoting *Galante v. Oz, Inc.*, 379 N.W.2d 723, 726 (Minn. Ct. App. 1986)).   Further, the benefit must be obtained unjustly – illegally or unlawfully – or in situations in which it would be "morally wrong" for one party to be enriched at the expense of another.  *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can.*, 552 N.W.2d 254, 269 (Minn. Ct. App. 1996); *see also Cady v. Bush*, 283 Minn. 105, 166 N.W.2d 358, 362 (Minn. 1969).

Plaintiffs have alleged that Digital River violated the CFA and FSAA by inducing them to purchase product that they did not want or need.  At this stage in the litigation, Plaintiffs may pursue alternative theories at law and in equity.  *See Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009). Because the Plaintiffs' alleged facts fulfill the elements of unjust enrichment, the Court will not dismiss this claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant Symantec's Motion to Dismiss [Docket No. 55] is **GRANTED in part and DENIED in part**:

      a.     The motion is **GRANTED** as to the Fourth Cause of Action, Declaratory Judgment under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.  The Fourth Cause of Action is **DISMISSED.**

      b.     The motion is **DENIED** in all other respects.

2.     Defendant Digital River, Inc.'s Motion to Dismiss [Docket No. 50] is **GRANTED in part and DENIED in part**:

      a.     The motion is **GRANTED** as to the Fourth Cause of Action, Declaratory Judgment under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.  The Fourth Cause of Action is **DISMISSED.**

      b.     The motion is **DENIED** in all other respects.

DATED:  March 12, 2012
at Minneapolis, Minnesota.

                                 s/ John R. Tunheim
                                    JOHN R. TUNHEIM
                             United States District Judge