## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DEVI KHODAY and DANISE TOWNSEND, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>  v.<br><br>SYMANTEC CORP., and DIGITAL RIVER, INC.,<br><br>       Defendants. | Civil Action No.  11-CV-00180  (JRT-TNL)<br><br>CLASS ACTION |

## PLAINTIFFS' MEMORANDUM IN SUPPORT
## OF CLASS CERTIFICATION

1753274.1

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................... 2

      A.    The Symantec and DR Relationship .................................................... 2

      B.    Defendants' Choice of Law Provisions ............................................... 3

      C.    Defendants Misrepresented the Same Facts to All Class Members ...................... 3

      D.    Customers Did Not Need to Buy Download Insurance to Redownload
            Their Products ..................................................................................... 5

            1.    Customers Could Redownload Their Software for Free ............................ 5
            2.    Customers Could Buy Download Insurance Later If Needed ................... 7

      E.    The Plaintiffs Bought Download Insurance Because of Defendants'
            Misrepresentations and Omissions ..................................................... 8

III.  CLASS DEFINITION ..................................................................................... 9

IV.   ARGUMENT .................................................................................................. 9

      A.    Requirements for Class Certification................................................... 9

      B.    The Proposed Class Satisfies the Requirements of Rule 23(a) and the
            Implicit Requirements of Specificity and Ascertainability................. 11

      C.    The Class Is Maintainable Under Rule 23(b)(3)................................. 13

            1.    Common Issues of Fact and Law Predominate........................ 13
                  a.    Common Questions of Fact ............................................. 14
                  b.    Common Questions of Law ............................................. 15
                        i.     CLRA, CFA and FSAA ..................................... 15
                        ii.    UCL.................................................................... 19
                        iii.   Unjust Enrichment ............................................ 20
            2.    Damages Can Be Measured on a Class-wide Basis................. 21
            3.    A Class Action is Superior.................................................... 22

V.    CONCLUSION............................................................................................. 23

Page

# **TABLE OF AUTHORITIES**

## CASES

*Abels v. JBC Legal Grp., P.C.*,
227 F.R.D. 541 (N.D. Cal. 2005) ............................................................22

*Amchem Prods., Inc. v. Windsor*,
527 U.S. 591 (1997) ............................................................................14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ........................................................................13

*Brown v. Wells Fargo & Co.*,
284 F.R.D. 432 (D. Minn. 2012) ...........................................................13

*City of Farmington Hills Emp. Ret. Sys. v. Wells Fargo Bank, N.A.*,
281 F.R.D. 347 (D. Minn. 2012) ................................................... *passim*

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal.App.4th 663, 38 Cal.Rptr.3d 36 (Cal. Ct. App. 2006) .............17

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ........................................................................21

*Craft v. Philip Morris Co., Inc.,* Cause No. 002-00406A at 34, Order on
Defendants' Motion For Reconsideration of Class Certification (Mo. Cir. Ct.
Sept. 13, 2004). ...................................................................................18

*Curtis v. Altria Grp., Inc.,*792 N.W.2d 836 (Minn. Ct. App. 2010), *abrogated on other
grounds by,* 813 N.W. 2d 891 (Minn. 2012) ........................................17

*Gete v. Immigration & Naturalization Serv.*,
121 F. 3d 1285 (9th Cir. 1997) ............................................................22

*Grp. Health Plan, Inc. v. Philip Morris Inc.*,
621 N.W.2d 2 (Minn. 2001) ...........................................................10, 16

*Hurley v. Pechiney Plastic Packaging, Inc.*,
No. C 05-05028 JSW, 2006 WL 708656 (N.D. Cal. 2006) ...................20

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (S.D. Cal. 2012) .....................................................10, 16

Page

*Johnson v. Gen. Mills, Inc.*,
    276 F.R.D. 519 (C.D. Cal. 2011) .........................................................................................11

*Johnson v. Harley-Davidson Motor Company Group, LLC*,
    285 F.R.D. 573 (E.D. Cal. 2012) .........................................................................................12

*Lockwood Motors, Inc. v. Gen. Motors Corp.*,
    162 F.R.D 569 (D. Minn. 1995).............................................................................................14

*In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*,
    No.-99-MD-1309, 2004 WL 909741 (D. Minn. Apr. 28, 2004)................................11, 14, 21

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
    244 F.R.D. 531 (D. Minn. 2007)...........................................................................................20

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
    Civ. No. 06-545, 2008 WL 2952055 (D. Minn. July 28, 2008) .............................................17

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
    Civ. NO. 06-545, 2009 WL 511572 (D. Minn., Feb. 26, 2009) ............................................16

*Motors, Inc. v. Times Mirror Co.*,
    102 Cal. App. 3d 735 (Cal. Ct. App. 1980) ..........................................................................20

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D 523 (N.D. Cal. 2012)...........................................................................................10

*Rossi v. Whirlpool Corp.*,
    No. 12-CV-125-JAM-JFM, 2013 WL 1312105 (E.D. Cal. Mar. 28, 2013) ...........................19

*Saulic v. Symantec Corp.*, 8:07-cv-00610-AHS-PLA (Apr. 21, 2008)............................................4

*Phillips Petroleum Co., v Shutts*, 472 U.S. 797 (1985) .........................................................22

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005) .......................................................................................10, 11

*In re: St. Jude Med. Inc.*,
    522 F.3d 836 (8th Cir. 2008) ("*St. Jude II*")........................................................................16

*State by Humphrey v. Alpine Air Prods., Inc.*,
    500 N.W. 2d 788 (Minn. 1993)..............................................................................................16

*In re Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145, 104 Cal. Rptr. 3d 329 (2010).................................................16, 17, 19

<u>Page</u>

*Tait v. BSH Home Appliances Corp.*,
    No. SA CV-10-0722, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) ....................................14

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (Cal. 2009) ...............................................................................................19, 20

*Vasquez v. Super. Ct. of San Joaquin Cty.*,
    4 Cal. 3d 800 (Cal. 1971) .........................................................................................................10

*Wal-Mart Stores, Inc., v. Dukes*,
    131 S.Ct. 2541 (2011) ..........................................................................................................10, 11

*Westways World Travel, Inc. v. AMR Corp.*,
    218 F.R.D. 223 (C.D. Cal. 2003) ..............................................................................................20

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..............................................................................................21, 22

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) ..........................................................................................11, 13

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) ................................................................................................13, 14

S<small>TATUTES</small>

Cal. Civ. Code, § 1760 ...................................................................................................................15

California Civil Code § 1710 ..........................................................................................................20

Minn. Stat. §§ 325F.67 ...................................................................................................................16

O<small>THER</small> A<small>UTHORITIES</small>

Fed. R. Civ. P. 23(b)(3)(A)-(D) .....................................................................................................22

Rule 23(a) ...........................................................................................................................10, 11, 13

Rule 23(b) ........................................................................................................................................10

Rule 23(b)(3) ........................................................................................................................13, 15, 22

iv

I.      **INTRODUCTION**

This case involves two companies who tricked their customers into purchasing an unnecessary service. Defendants Digital River, Inc. ("DR") and Symantec Corp. ("Symantec") sold the Norton line of computer security software products to customers through an online store. Defendants told customers they had only 60 days to download their software, but could extend that time if they also purchased a service called "Extended Download Service" ("EDS") or "Norton Download Insurance" ("NDI") (collectively "Download Insurance"). Download Insurance was automatically added to the customer's shopping cart.

Contrary to Defendants' statements, customers did not have to buy Download Insurance to redownload their software beyond 60 days. Free re-downloads were available on Defendants' websites. Moreover, Defendants permitted customers to buy Download Insurance later. There was no need to buy it at point of sale. Defendants omitted these alternatives from consumers to induce them to purchase

This case is ideal for class treatment. Each Defendant adopted a choice of law provision making its respective home state law applicable to any disputes--California for Symantec, and Minnesota for DR. The Defendants collected over ███ million by gulling customers to pay small amounts (around $7.99) for an unnecessary service, making individual lawsuits untenable. Defendants' representations about Download Insurance were fundamentally the same throughout the 2005-2011class period. Defendants' concealed from all class members the same material facts. Thus, the consumer fraud and unfair competition claims can be proven class-wide by common

1

evidence including documents and testimony showing Defendants' knowledge that customers relied on their representations and omissions about Download Insurance; the Plaintiffs' credible testimony of injury; and expert testimony showing that the Defendants' misconduct caused injury to the class.

For these reasons, the Court should certify the class, and appoint the named Plaintiffs as class representatives.

## II.  FACTUAL BACKGROUND

### A.  The Symantec and DR Relationship

In 2000, Symantec contracted with DR, an e-commerce sales business, to sell Norton products online.[1] DR sold EDS to Norton purchasers, and gave Symantec ███ of the revenue.[2] This deal allowed Symantec to avoid paying DR higher sales commissions.[3] Symantec retained the authority to ████████████████████████ ████████████████████████[4]████████████████████████ ████████████████████████████████[5]█████████ ██████████████████████████[6]

---

[1] *See* Affidavit of Douglas McNamara ("McNamara Aff.") at Tab 1, Dep. of Rick Bump ("Bump Dep.") at 12:6-18. *See also id.* at Tab 2, Second Amended and Restated and Settled Online Store Agreement ("SARSOSA") at DR-0054170-71. Hereinafter, all references to a "Tab" number refer to the McNamara Affidavit. In addition, a timeline of the case with sources has been provided at **Exhibit A** to the McNamara Aff.

[2] Tab 2, SARSOSA at DR-0054171.

[3] Tab 3, June 26, 2007 email RE: Interesting Read at SYMC-KHOD-0041023; Tab 4, Dep. of Nat Maple ("Maple Dep.") at 149:21-23, 152:6-12; 255:20-262:11.

[4] Tab 2, *supra*; Tab 4, Maple Dep. at 77:1-79:22.

[5] Tab 5, "Symantec Account Overview PPT" at DR-0918108; Tab 6, July 31, 2010 email re Drop in the Cart at SYMC-KHOD-0058865.

[6] Tab 1, Bump Dep. at 68:1-71:3; Tab 7, Oct. 26, 2007 Desk Statement at SYMC-

On October 26, 2009, Symantec assumed control over the U.S. Symantec online store, and changed the name of EDS to "Norton Download Insurance."[7] On March 10, 2011, Symantec stopped selling NDI in the United States.[8]

### B.    Defendants' Choice of Law Provisions

Before October of 2009, customers buying EDS were subject both to Symantec's "terms and conditions" contained in its "Legal Notice" (making California law applicable to claims against Symantec) and DR's "Terms and Conditions" (making Minnesota law applicable to disputes with DR).[9] After that, NDI purchasers remained subject to Symantec's Legal Notice.

### C.    Defendants Misrepresented the Same Facts to All Class Members

When buying a Norton product, Download Insurance was automatically added to a customer's shopping cart, along with a link describing it. From at least 2004 to August 2, 2008, that description stated:

> **What is the Extended Download Service?**
> When you order a downloadable product from the Symantec Store you are automatically granted a 60 day window in which your purchase can be redownloaded at any time.  After this 60 day window has passed your download will no longer be available unless the Extended Download Service is also purchased. When this service is purchased, we will keep a

---

KHOD-0033104.

[7] Tab 8, Oct. 2, 2009 email re when will LV first start offering NDI on the store at SYMC-KHOD-0220721.

[8] Tab 9, Mar. 25, 2011 email re NDI sunset plan - update at SYMC-KHO-0059161.

[9] *See, e.g.*, Tab 10, Extended Warranty Service Agreement atSYMC-KHOD-0197743; Tab 11, Dep. of Paula Romsdahl ("Romsdahl Dep.") at 53:5-55:18; Tab 12, Affidavit of Christopher Butler, Internet Archives ("Butler Aff.") Ex. A, at 27, 30 (stating that all access and use of this website is governed by California law).

> backup copy of your file on our server for one full year after
> the date of purchase, meaning that you can redownload
> whenever necessary during that extended period.[10]

In 2008, Defendants slightly changed the EDS description:

> **What is the Extended Download Service?**
> When you purchase downloadable software from Symantec's
> online store, Digital River, Symantec's authorized online
> retailer, automatically grants you 60 days from the date of
> purchase to download your software order.
>
> If you add Extended Download Service to your downloadable
> software purchase order, Digital River will keep a backup of
> all the software on your order for ONE YEAR…If you need
> to re-download your software, or access your Serial Key, it
> will be available … for ONE YEAR from the date of
> purchase. . . .[11]

In 2009, the description for "Norton Download Insurance" stated:

> **Norton Download Insurance**
> When you purchase downloadable software from the Norton Store,
> you automatically receive the ability to download your software for
> 60 days from the date of purchase. Norton Download Insurance
> extends the time you can access your downloadable software by
> providing you the freedom and flexibility to download or re-
> download your software for one year.[12]

DR executive Rick Bump testified that the EDS descriptions conveyed

"fundamentally the same message," that customers could access their product download

for 60 days unless they also purchased EDS.[13] DR employees comparing the descriptions

---

[10] Tab 13, Decl. of R. Bump in Support of Digital River, Inc.'s Opp. to Plaintiffs' Mot. for Class Cert. at 14, *Saulic v. Symantec Corp.*, 8:07-cv-00610-AHS-PLA (Apr. 21, 2008).

[11] *See, e.g.,* Tab 14, Aug. 2, 2008 email re New EDS Pop-up on the NAM Store at SYMC-KHOD-00369886.

[12] *See, e.g.,* Tab 15, Oct. 15, 2009 email re EDS at DR-0956323.

[13] Tab 1, Bump Dep. at 97:16-101:19; 199:25-203:1.

for NDI and EDS agree that the wording for NDI "is almost word for word what we have" for EDS.[14] Defendants' customer service representatives used the same messaging in their scripts.[15] In addition to these misrepresentations, the name "Extended Download Service" conveys that the service "extends" the download period, while "Norton Download Insurance" conveys that it "insures" the ability to download in the future.[16]

### D.   Customers Did Not Need to Buy Download Insurance to Redownload Their Products

#### 1.   *Customers Could Redownload Their Software for Free*

Rather than buy Download Insurance, customers could redownload their Norton product without charge using what Defendants call "trialware," a free version of the software. Trialware links existed in many places on the internet, including Symantec's online store and its customer support web pages.[17] After downloading trialware, customers would be instructed to enter their product key to activate it, whereupon they would have the same entitlements that were originally purchased.[18] Defendants' customer

---

[14] Tab 15, *supra,* at DR-0956322. *Accord*, Tab 16, Dep. of Luke Frandrup ("Frandrup Dep.") at136:12-137:9.

[15] Tab 1, Bump Dep. at 223:22-224:8; Tab 11, Romsdahl Dep. 70:19-74:7, 115:15-117:25; Tab 17, Customer Service  Manual at DR- DR-0021600; Tab 18, EDS Scripts atDR-0051538; *accord* Tab 19, Script atDR-0052047.

[16] Tab 16, Frandrup Dep. at 94:17-95:16 ("[I]t's worth noting that the title of EDS was probably more impactful than the fine details … people are more likely to pay attention to the title of a product versus all the details of a product.").

[17] Tab 20, Dep. of Lenny Alugas, ("Alugas Dep.") at 15:23-17:3, 38:13-39:2; Tab 21, Oct. 5, 2007 Home & Home Office Monthly Web Metrics Report (SYMC-KHOD-0032682).

[18] *See* Tab 22, video "How to Redownload your Norton Product", posted Jan. 18, 2011 at https://www.youtube.com/watch?v=xUz6bNtTtN8, last visited June 25, 2013. *See also* Tab 4, Maple Dep. at 197:22-204:1, Tab 23, Dep. of Brendon Toch ("Toch Dep.") at 227:7-228:2, 230:3-233:7, 235:6-241:21.

service personnel ignored the purported 60-day limit when assisting customers in redownloading their product, often using trialware to help them.[19]

Defendants' sales executives did not want the trialware option disclosed to prospective purchasers:

> Technically speaking someone who didn't by (sic) eds on retail could just download trialware and activate with the key they already have, in lieu of ever buying eds … Shhh!"[20]

While not disclosed on the online store, in October 2007, Symantec redesigned its *customer support webpage* to include trialware links for *all post-2005 Norton products* on a single page simply titled, "I want to re-download my Norton product." [21] DR was not happy with this change, and two of its executives feared that "this is usurping eds for sure if they are pushing it." [22]

However, like DR, Symantec never informed customers before they bought Download Insurance about the free trialware alternatives.[23] Internally, Symantec executives derided Download Insurance as "cancerous to customer service,"[24] giving

---

[19] Tab 24, March 29, 2013 Symantec Corp.'s Suppl. Resp. to Interrog. No. 10 at 4; Tab 23, Toch Dep. at 117:4-124:4; Tab 11, Romsdahl Dep. at 77:16-85:24; 102:1-106:1

[20] Tab 25, Feb. 19, 2007 email re 49997 at DR-0594994.

[21] Tab 24, March 29, 2013 Symantec Corp.'s Suppl. Resp. to Interrog. No. 10 at 4; Tab 20, Alugas Dep. at 35:15-42:18; 78:7-15, 80:22-87:4; Tab 26, March 14, 2007 email re N360 Review on Amazon at SYMC-KHOD-0046842; Tab 27, Nov. 17, 2007 screenshots for Symantec.com. The "I want to re-download my Norton product" page continued to house the trialware links through 2011. Tab 28, Screenshots of "I want to re-download my Norton product," from Symantec.com, 2007 to 2011.

[22] Tab 29, Feb. 22, 2008 email re where are these dl's hosted? (DR-0297535-0297536); Tab 16, Frandrup Dep. at 52:5-58:23, 68:3-70:3,75:11-77:18.

[23] Tab 1, Bump Dep. at 189:11-192:21;Tab 20, Alugas Dep.at 25:14-27:13; Tab 30, Deposition of Rachel Soffa ("Soffa Dep.") at 91:11-91:12.

[24] Tab 31, Aug. 25, 2010 email re NDI Team – a few updates at SYMC-KHOD-

them "the creeps,"[25] and "adding little value."[26] While Symantec's head of consumer business group, Janice Chaffin and her staff were "unanimous in is wanting to get rid of NDI as soon as possible,"[27] they continued to sell it because, "we have a number to make."[28]

### 2.    *Customers Could Buy Download Insurance Later If Needed*

Defendants allowed customers to purchase Download Insurance *after* the 60 day initial download period had expired for the same price and on the same terms as they offered at point of sale.[29] Even were there a need for Download Insurance, customers could wait until their computer crashed or was replaced before buying it. Defendants never disclosed this option to customers when they inserted Download Insurance into their shopping carts.[30]

---

0003611.

[25] Tab 32, Dec. 19, 2009 email re Our eCommerce priorities at SYMC-KHOD-0061000.

[26] Tab 33, Jan. 31, 2006 email re Do not add EDS to Subs sales atDR-0098588; *See also* Tab 34, June 5, 2010 email from Weeda to Soffa, at CW-KHOD-0000353. ("I always thought [the right to re-download the product] was not really adding a lot of value to customers.").

[27] Tab 35, Aug. 26, 2010 email at SYMC-KHOD-0058230; Tab 30, Soffa Dep. at 275:2-277:4.

[28] Tab 36, Nov. 6, 2010 email re moving from NDI to general availability in Norton Account at SYMC-KHOD-0209824.

[29] Tab 11, Romsdahl Dep. at 41:13-43:3; 112:4-115:8; Tab 37, Sep. 20, 2006 Email "what's the best thing to do for the customer" type scenario at DR-1352248; Tab 1, Bump Dep. at 214:17-217:14; Tab 38, Oct. 27, 2007 Screenshot for Symantec.com at 4 (pre-redesign  page instructing customers who did not buy EDS and needed to redownload product to contact customer service to buy it); Tab 39, Scripts re Extended Download Service at SYMC-KHOD-0197739.

[30] Tab 1, Bump Dep. at 228:13-231:13*;* Tab 40, Deposition of Andrew Carrane Dep. ("Carrane Dep.") at 69:18-72:14; Tab 20, Alugas Dep. at 62:15-65:17.

E.     **The Plaintiffs Bought Download Insurance Because of Defendants'**
       **Misrepresentations and Omissions**

Plaintiffs Devi Khoday ("Khoday") and Danise Townsend ("Townsend") filed suit

on January 24, 2011 on behalf of a class against Symantec and DR. Plaintiffs amended

their complaint on April 14, 2011. [31] Against California-based Symantec, Plaintiffs

asserted claims for violations of the Consumer Legal Remedies Act ("CLRA"), the

Unfair Competition Law ("UCL"), and for unjust enrichment. Against Minnesota-based

Digital River, Plaintiffs asserted claims for violation of the Minnesota Consumer Fraud

Act ("MCFA"), False Statement in Advertising Act ("FSAA"), and for unjust

enrichment. *Id.*

Plaintiff Townsend bought EDS from DR on several occasions, including June 7,

2006.[32] She paid $8.99 on her $39.99 purchase of Norton Antivirus 2006.[33] Ms.

Townsend suffered damages, having bought EDS because she believed that if her

computer crashed, she would have to repurchase her Norton product.[34] Had she known

that she could have bought EDS later, if she had needed it, or that she could have used the

trialware solution, she would not have purchased EDS.[35] She is aware of her duties as a

class representative.[36]

Ms. Khoday purchased NDI for $6.99 in February of 2010, in conjunction with her

---

[31] ECF 40.
[32] Tab 41, Electronic Summary of Townsend Purchases at SYMC-KHOD-0000003.
[33] *Id.*
[34] Tab 42, Deposition of Danise Townsend ("Townsend Dep.") at 44:6-47:18.
[35] *Id.* at 184:4-184:23.
[36] *Id.* at 92:23-93:8.

purchase of Norton 360.[37] She relied on the NDI description and believed that the

Download Insurance extended the time for her to access her product in case her computer

crashed – or she would have to buy it again.[38] Had she known about alternatives she

would not have bought NDI.[39]

## III.   <u>CLASS DEFINITION</u>

Plaintiffs seek certification of the following class:

**All persons in the United States who purchased Extended Download Service ("EDS") for Norton products or Norton Download Insurance ("NDI") between January 24, 2005 and March 10, 2011.**

Based upon the applicable statutes of limitations, the claims of the class members

break down as follows:

- **January 24, 2005 – October 26 2009** – Claims against DR under Minnesota CFA and FSAA, or Unjust Enrichment;

- **January 24, 2007 – March 10, 2011** – Claims against Symantec under California UCL, or Unjust Enrichment;

- **January 24, 2008 – March 10, 2011** – Claims against Symantec under California CLRA.

## IV.   <u>ARGUMENT</u>

### A.   **Requirements for Class Certification**

The class action mechanism conserves the resources of the court and the parties by

permitting an issue that impacts every class member to be litigated in an economical

---

[37] Tab 43, Deposition of Devi Khoday ("Khoday Dep.") at 60:8-18; Tab 44, Confirmation page of Devi Khoday's purchase at KHOD-000001-002.
[38] Khoday Dep. at 61:1-14.
[39] *Id.* at 51:18-53:2. Ms. Khoday even successfully re-downloaded her Norton product using the free alternative at her deposition. *Id.* at 17:13-25:3.

fashion. *City of Farmington Hills Emp. Ret. Sys. v. Wells Fargo Bank, N.A*., 281 F.R.D. 347, 351 (D. Minn. 2012). The class action is especially vital to consumer protection because individual small dollar actions are "impracticable" and, absent a class claim, "an unscrupulous seller retains the benefits of its wrongful conduct." *Vasquez v. Super. Ct. of San Joaquin Cty*., 4 Cal. 3d 800, 808 (Cal. 1971); *cf. Grp. Health Plan, Inc. v. Philip Morris Inc*., 621 N.W.2d 2, 9–10 (Minn. 2001). Class action "certifications to encourage compliance with consumer protection laws are desirable and should be encouraged." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012) (citation omitted).

To be certified as a class, plaintiffs must meet all four requirements of Rule 23(a) and must satisfy one of three subsections of Rule 23(b). *In re St. Jude Med., Inc*., 425 F.3d 1116, 1119 (8th Cir. 2005). When considering a motion for class certification, a court asks whether the plaintiffs have made a *prima facie* showing that the Rule 23 requirements are met. *Farmington Hills*, 281 F.R.D. at 352; *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D 523, 528 (N.D. Cal. 2012). A court may certify a class if it is satisfied, after a vigorous analysis, that the moving party is "prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.," in compliance with Rule 23. *Wal-Mart Stores, Inc., v. Dukes*, 131 S.Ct. 2541, 2551 (2011). If there is a question as to whether class certification is appropriate, "the court should give the benefit of the doubt to approving the class." *Farmington Hills*, 281 F.R.D. at 352 (citations omitted); *accord Wolph v. Acer Am. Corp*., 272 F.R.D. 477, 481 (N.D. Cal. 2011).

**B.      The Proposed Class Satisfies the Requirements of Rule 23(a) and the Implicit Requirements of Specificity and Ascertainability**

Rule 23(a) imposes four requirements for class certification: 1) the class is so numerous that joinder of all members is impracticable; 2) questions of law or fact are common to the class; 3) the class representatives' claims or defenses are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. *In re St. Jude Med., Inc*., 425 F.3d at 1119.

Each requirement is met here. As to numerosity, Defendants' sales figures show that during the class period, Defendants sold Download Insurance over ██ million times in the U.S.[40] As to commonality, each Plaintiff and all class members purchased Download Insurance based upon the same representations and omissions of Defendants. *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 521 (C.D. Cal. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2551) (holding commonality shown where claims "depend on a common contention" capable of class-wide resolution "in one stroke"), *see also In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*, No.-99-MD-1309, 2004 WL 909741, at *1 (D. Minn. Apr. 28, 2004) (certification allowed where there are common questions of fact *or* common questions of law).

Here, the following questions of law and fact are common to all class members:

- Whether Defendants actions violated Minnesota and California consumer protection law;

- Whether Defendants' representations about the necessity of Download Insurance were true;

---

[40] *See* Tab 45, Spreadsheets of Download Insurance Sold and Revenues.

- Whether Defendants' representations about the necessity of Download Insurance were likely to mislead or deceive class members;

- Whether Defendants' representations and omissions were material; and

- Whether the class is entitled to punitive damages on their claims against Symantec.

As to typicality, the Plaintiffs' claims are typical of the class because they are based on the same legal theories – consumer fraud – and the same course of conduct – Defendants' uniform representations and omissions. *Farmington Hills*, 281 F.R.D. at 350, 352-53 (plaintiff's claims are typical where class members entered into agreements having similar, though not identical, language evidencing "a common mandate").

Plaintiffs and their attorneys also satisfy the adequacy requirement. Both Plaintiffs wish to vindicate the rights of other purchasers of Download Insurance[41] and they have retained competent attorneys in this matter who have diligently conducted, and will continue to zealously pursue, the litigation.[42] *Johnson v. Harley-Davidson Motor Company Group, LLC*, 285 F.R.D. 573, 578 (E.D. Cal. 2012) (adequacy met where named plaintiffs and their counsel lack conflicts with the class and can prosecute the action vigorously on behalf of the class).

Plaintiffs also satisfy two "implicit" requirements for class certification: that the proposed class is precisely defined and that the class members are objectively ascertainable. *Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 444 (D. Minn. 2012). Here,

---

[41] *See* Tab 42, Townsend Dep. at 92:23-93:8; Tab 43, Khoday Dep. at 30:13-16.

[42] Plaintiffs previously provided firm resumes for Cohen Milstein and Lockridge Grindal to the Court in their motion for Appointment as Interim Lead Counsel. See ECF 46. Plaintiffs herein provided at Tab 46, the resume of the Wentz Law Firm, and at Tab 47, the resume of McLaughlin & Stern, LLP.

the proposed class definition specifies a time frame, and a unique, particular service sold by Defendants. Moreover, the class and the identity of class members are readily ascertainable from Defendants' sales records.[43] *Wolph*, 272 F.R.D. at 482 (class definition is specific if it is administratively feasible to determine whether a particular individual is a class member).

### C.   The Class Is Maintainable Under Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed class satisfies both prongs of Rule 23(b)(3).

#### 1.   *Common Issues of Fact and Law Predominate*

At this stage, the Court examines not whether plaintiffs have proved their claims through common evidence, but whether the common questions that thread those claims predominate over individual questions. *In re Zurn Pex Plumbing Prods. Liab. Litig*., 644 F.3d 604, 619 (8th Cir. 2011); *accord Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). The predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Tait v. BSH Home Appliances Corp*., No. SA CV-10-0722, 2012 WL 6699247 at *10 (C.D. Cal.

---

[43] Both Defendants maintained detailed Download Insurance sales records that include the customer's name, mailing and email addresses, date of purchase, and price paid. *See e.g.*, Tab 48, Exemplar of the customer databases from DR and Symantec.

13

Dec. 20, 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 527 U.S. 591, 623 (1997)).

This test is "readily met" in certain cases alleging consumer fraud. *Id.*, (*citing Amchem*,

527 U.S. at 625 (finding issues of what defendant knew and did not disclose about its

washers predominated over individual issues)).

Common issues predominate where "there exists generalized evidence which

proves or disproves an element on a simultaneous, class-wide basis, since such proof

obviates the need to examine each class member's individual position." *Lockwood*

*Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D 569, 580 (D. Minn. 1995). While the

existence of individual defenses may be a factor in a court's decision to certify a class,

the relevance of such defenses must be subjected to the same rigorous inquiry as

plaintiffs' claims. *In re Zurn*, 644 F.3d at 619.

a.    *Common Questions of Fact*

Here, the factual basis underlying each claim is the same. Class members

purchased Download Insurance for a Norton product because Defendants led them to

believe that this service was necessary, whether through the misrepresentations in the

service descriptions, through the omissions of material fact, or by the name of the service

itself. The slight changes[44] in the written descriptions between 2005 and 2011 did not

alter the essential representation, and never included the omitted material facts. *In re:*

*Lutheran Brotherhood*, 2004 WL 909741 at *2 (denying motion to decertify a class

where slight differences in statements "do not change the uniform nature of the basic

---

[44] *See, e.g.*, Tab 1, Bump Dep. at 97:15-101:19; Tab 16, Frandrup Dep. at 136:12-137:9.

misrepresentation that Plaintiffs allege."). Even if a purchaser directly contacted Defendants' customer service about Download Insurance, as Plaintiff Danise Townsend did, the customer service personnel relied on uniform scripts and FAQs to handle the inquiries, conveying "fundamentally the same" message – that Download Insurance was necessary to ensure access to their Norton software after sixty days.[45] Defendants never disclosed to purchasers the free trialware solution or that Download Insurance could be purchased later, only if needed.

### b.    Common Questions of Law

Given Defendant's common and uniform misconduct, Plaintiffs can prove class-wide claims under the four consumer protection statutes: the Minnesota CFA and FSAA, and the California CLRA and UCL. Each of these causes of action lends itself to proof by common inquiry, thereby satisfying Rule 23(b)(3).

### i.    CLRA, CFA and FSAA

The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code, § 1760.

To establish a CLRA violation, Plaintiffs must show that Symantec's conduct was deceptive, and that the deception caused harm. Causation may be established on a class-wide basis by a showing of materiality; if a material representation is made to the entire

---

[45] *See e.g.*, Tab 1, Bump Dep. at  223:22-224:8; Tab 11, Romsdahl Dep. at 148:22-150:16.

class, an inference of reliance arises as to the class. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156-57, 104 Cal. Rptr. 3d 329, 338-39 (2010). A misrepresentation or omission is material under California law if a reasonable person "would attach importance to its existence or nonexistence in determining his choice of action." *Id*. Materiality is a question of fact to be determined subsequent to class certification. *Johns*, 280 F.R.D. at 558-59.

The Minnesota CFA and FSAA similarly do not require individualized proof of reliance, as the laws were "clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law." *State by Humphrey v. Alpine Air Prods., Inc*., 500 N.W. 2d 788, 790 (Minn. 1993); Minn. Stat. §§ 325F.67; 325F.69, subd. 1; *see also In re: St. Jude Med. Inc*., 522 F.3d 836, 839 (8th Cir. 2008) ("*St. Jude II*") (the consumer's reliance on a defendant's conduct is not required to prove a CFA violation).[46] Rather, plaintiffs must show some "causal nexus" to connect their injury and the defendant's wrongful conduct. *Group Health*, 621 N.W. 2d at 13-14.

A causal nexus can be established by several types of evidence, such as "consumer testimony, expert witness testimony, consumer surveys, and market research." *Mooney v.*

---

[46] Minnesota courts have subsequently clarified the Eighth Circuit's observation in *St. Jude II* that "fraud cases often are unsuitable for class treatment." 522 F.3d at 838. This comment does not mean that consumer fraud class actions are "never appropriate for class treatment," because "[t]o so hold would eviscerate the most logical vehicle to achieve the purpose of [Minnesota consumer fraud statutes] – namely to expose and rectify fraud." *Mooney v. Allianz Life Ins. Co. of N. Am.,* Civ. NO. 06-545, 2009 WL 511572 at *4 n.2 (D. Minn., Feb. 26, 2009). Following *St. Jude II*, courts have certified consumer fraud cases where, as here, the claims involve uniform misrepresentations and straightforward interactions between class members and defendants. *See, e.g*., *id*. at *6 (distinguishing case from *St. Jude II*); accord, *Farmington Hills*, 247 F.R.D. at 356.

*Allianz Life Ins. Co. of N. Am.*, Civ. No. 06-545, 2008 WL 2952055, at *2 (D. Minn. July 28, 2008). Causation can also be proven through commonsense inferences arising from a defendant's efforts to persuade consumers. *See Curtis v. Altria Grp., Inc*., 792 N.W.2d 836, 859 (Minn. Ct. App. 2010) (affirming class certification and finding it commonsense to infer that Philip Morris' "massive advertising campaign was successful in persuading consumers" that "light" cigarettes were healthier), *abrogated on other grounds by,* 813 N.W. 2d 891 (Minn. 2012), c*f. Farmington Hills*, 281 F.R.D. at 356 (noting defendant had not "negated the common sense inference" that its written statements "may have successfully persuaded the class members of the safety of their investments").

Materiality and causal nexus will be established through common evidence. The importance of the misrepresentations and omissions in this case is so direct and obvious that the fact-finder can determine materiality and causal nexus through common sense inferences. *Farmington Hills,* 281 F.R.D. at 356*; see also Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 681-82, 38 Cal.Rptr.3d 36, 49 (Cal. Ct. App. 2006) (concluding that no consumer survey evidence needed as "reasonable consumer" would have likely believed "Made in the USA" means what it says); *Steroid,*104 Cal. Rptr. 3d at 338-39 (reversing denial of class, finding whether reasonable person would have considered legality of supplements a common question that predominates). Additionally, Plaintiffs will show that Defendants' *intended* to convey the message that Download Insurance was necessary, and intended that purchasers would rely on that message. Defendants explicitly stated in their disclosures that Download Insurance was necessary if the customer wanted to redownload their product after 60 days, and deliberately did not

17

include references to alternatives at the point of purchase.[47] Defendants went so far as to

"Shhh" each other about the availability of these alternatives.[48] Defendants sold

Download Insurance by the millions, leading to the commonsense inference that their

messaging was effective.[49] Plaintiffs will also rely on consumer testimony like that of

Plaintiffs that they were, in fact, deceived.[50]

For the CFA, the necessary causal nexus can also be established where the

consumer receives a service worth less than was represented. *Craft v. Philip Morris Co.,*

*Inc.*,[51] Cause No. 002-00406A at 34, Order on Defendants' Motion For Reconsideration

of Class Certification (Mo. Cir. Ct. Sept. 13, 2004)[52]. In such instances, all consumers

who bought the misrepresented product were injured in the same way and in the same

amount— the difference between what was paid and what the service was actually worth.

*Id.*at 34-35.[53] Through expert testimony, Plaintiffs will show that the difference between

---

[47] *See* Tab 1, Bump Dep. at 189:11-192:21, Tab 30, Soffa Dep. at 91:11-92:12; Tab 20, Alugas Dep. at 25:14-27:13; 62:15-65:17.

[48] Tab 25, Feb. 19, 2007 email at DR-0594994; Tab 40, Carrane Dep. at 92:12-93:1.

[49] Tab 45, *supra.*

[50] Tab 42, Townsend Dep. at 44:16-47:18; Tab 43, Khoday Dep at 51:18-52:8. Defendants may argue that the trialware alternative was so cumbersome compared to Download Insurance that they need not have disclosed it to customers at the point of purchase. But the trialware alternative was easily described in a customer support video. *See*, Tab 22, and even utilized by Khoday at her deposition. Khoday Dep. at 17:13-25:3.

[51] In this opinion, the Missouri court relies throughout on the Minnesota Supreme Court's decision in *Group Health*, as instructive in its interpretation of the Missouri consumer protection statute.

[52] The unpublished opinion is attached to the McNamara Aff. at Tab 49.

[53] In *Craft*, a case involving a class of consumers who purchased "light" cigarettes, Judge David gave the following instructive example:

[I]f someone purchases on a whim … a counterfeit Rolex watch, paying $500 for a fake Rolex that would have been worth $800 if it were (as it was

Download Insurance and the trialware alternative is de minimus.[54]

ii.   <u>UCL</u>

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice ...." *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (Cal. 2009). Plaintiffs assert claims against Symantec under each prong of the UCL.[55] First, the "unlawful" prong is satisfied by Symantec's violation of the CLRA, and is subject to the same predominance analysis discussed above. *Rossi v. Whirlpool Corp.*, No. 12-CV-125-JAM-JFM, 2013 WL 1312105, at *6 (E.D. Cal. Mar. 28, 2013) (noting that "[t]he UCL borrows violations of other laws and makes those unlawful practices actionable under the UCL.") (citation omitted).

Second, Plaintiffs' burden under the fraud prong of the UCL is also similar to the CLRA. Courts have "repeatedly and consistently [held] that relief under the UCL is available without individualized proof of deception, reliance and injury." *In re Tobacco II*, 46 Cal. 4th at 320. Symantec's misrepresentations and concealments were "likely to

---

represented to be) the genuine article but is actually only worth $100 as is, hasn't that person still been economically harmed by the deceptive practice, notwithstanding the fact that he may not have specifically relied on the false representations in choosing to purchase the fake Rolex?  And is such loss not caused by the untruth of the misrepresentation?  Yes to both.  The fact of the matter is (1) such a purchaser has been harmed, and (2) his harm was unquestionably caused by the false representations [] and he clearly would not have suffered any of this ascertainable monetary loss but for the falsity of the representations.

*Id*. at 35.

[54] Tab 50, Decl. of S. Gaskin.

[55] FAC ¶¶ 39-40, 42.

19

mislead" within the meaning of California Civil Code § 1710.[56] This is an objective standard, appropriate for a class jury to consider. *Id.* at 327 (citation omitted).

Finally, the "unfair" prong requires a balancing of the harmful impact of Symantec's conduct on the class against its "reasons, justifications and motives" for the conduct. *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (Cal. Ct. App. 1980). Symantec is liable if the harm to the Plaintiff is greater than the utility of its conduct in selling Download Insurance. *Id.*, *Hurley v. Pechiney Plastic Packaging, Inc.*, No. C 05-05028 JSW, 2006 WL 708656 at *7 (N.D. Cal. 2006) ("Unfair" means any practice whose harm to the victim outweighs its benefit.). Here, the impact on all class members will be substantially similar – the loss of the $7 to $11 paid for Download Insurance – and the reasons and justifications for Symantec's conduct will be the same, regardless of the individual purchaser. This is another question that can be established by common proof.

### iii.   Unjust Enrichment

Plaintiffs' claims for unjust enrichment can be certified under either California or Minnesota law.  *See Mooney v. Allianz Life Ins. Co. of N. Am.,* 244 F.R.D. 531, 537 (D. Minn. 2007) (certifying MCFA and unjust enrichment claims); *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 242 (C.D. Cal. 2003) (certifying nationwide class of unjust enrichment claimants). Plaintiffs can show through the common evidence set out above that Defendants wrongly enriched themselves by selling an unnecessary service to

---

[56] Cal. Civ. Code §1710 defines "Deceit" as, *inter alia*, "The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.]"

20

the class without disclosing the alternatives. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (reversing denial of class certification, noting common questions of defendant's knowledge predominated including whether defendants were unjustly enriched).

### 2.   *Damages Can Be Measured on a Class-wide Basis*

Individualized issues as to damages will not, alone, prevent class certification. *In re Lutheran Brotherhood*, 2004 WL 909741 at *3. At the class certification stage, plaintiffs' damages model must be both capable of determination on a class-wide basis and consistent with their liability case. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

Plaintiffs are entitled to out-of-pocket damages under the CFA, FSAA and CLRA and to restitution under the UCL or unjust enrichment.  Unlike the differing antitrust theories in *Comcast*, where each resulted in different kinds and amounts of damages, the methods of calculating damages in this case are straightforward and applicable to each theory of liability. Because reasonable consumers would not have purchased a service that they could get elsewhere for free, Plaintiffs contend that class members are entitled to 100% of the amount they paid to Defendants and/or 100% of the amount each Defendant retained. As noted above, Plaintiffs have those figures.

In the alternative, if the trier of fact agrees with Defendants that there is some "convenience" value to Download Insurance, Plaintiffs' have expert testimony determining, through a conjoint analysis, that the difference in value between the Download Insurance against the free trialware solution was inconsequential, and could be

determined on a class-wide basis.[57]

### 3.    A Class Action is Superior

Plaintiffs' proposed class satisfies Rule 23(b)(3)'s superiority prong, which requires that a class action be "superior to other available methods" of adjudication, as determined by consideration of (1) the class members' interest in individually controlling separate actions; (2) the extent and nature of any similar pending litigation; (3) the desirability of concentrating the claims in the particular forum; and (4) the difficulties likely encountered in managing the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D); *Gete v. Immigration & Naturalization Serv.*, 121 F. 3d 1285, 1299 (9th Cir. 1997).

First, there is no evidence that class members wish to control the litigation of their own claims - unsurprising since Defendants' fraud was so effective that most consumers are not aware that they were deceived. *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) (a class action is superior where potential plaintiffs may not even know their rights have been violated). Moreover, the amount of damages for each class member is so small – around $7.99 – that most class members "would have no realistic day in court if a class action were not available." *Shutts*, 472 U.S. 797, 809 (1985); *Wolin*, 617 F.3d at 1176.

With respect to the second and third factors, Plaintiffs' counsel are not aware of any individual cases involving this case or controversy currently pending, and a class action would prevent unnecessary and duplicitous litigation.

Fourth, the proposed class would be easily managed. The class is ascertainable and

---

[57] Tab 50, Decl. of S. Gaskin at 4.

22

class members can be located using Defendants' sales records. No bifurcation of damages and liability would be needed. Plaintiffs' trial plan is to try the claims of the named representatives together; show the common misconduct that occurred during the class period; and have the jury make findings against both Defendants under their respective laws, and award damages.

## V.   **CONCLUSION**

For the reasons discussed herein, Plaintiffs respectfully request that the Court certify this case as a class action; appoint Devi Khoday and Denise Townsend as class representatives, and appoint Plaintiffs' attorneys as class counsel.

DATED: June 26, 2013

Respectfully Submitted,

By: /s/  Karen H. Riebel
Karen Hanson Riebel, #219770
Kate M. Baxter-Kauf, #392037
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401
Telephone: 612-596-4097
Facsimile:  612-339-0981
khriebel@locklaw.com

Andrew N. Friedman
Douglas J. McNamara
Mary J. Bortscheller
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699

23

afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com
mbortscheller@cohenmilstein.com


Richard Wentz
Jean Wentz
THE WENTZ LAW FIRM
2955 East Hillcrest Drive
Suite 123
Thousand Oaks, CA  91362
Telephone: (805) 374-0060
Facsimile:  (888) 855-8124
rick.wentz@gmail.com
jean.wentz@gmail.com

Lee S. Shalov
MCLAUGHLIN & STERN LLP
260 Madison Ave.
New York, NY  10016
Telephone:  (516) 278-4928
Facsimile:  (212) 448-0066
lshalov@mclaughlinstern.com

*Attorneys for Plaintiffs Devi Khoday and Danise Townsend*