## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DEVI KHODAY and DANISE TOWNSEND, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>  v.<br><br>SYMANTEC CORP., and DIGITAL RIVER, INC.,<br><br>       Defendants. | Civil Action No.  11-CV-00180 (JRT-TNL)<br><br>CLASS ACTION<br><br>**CORRECTED PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION** |

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................... 1

II.  ALL CLASS MEMBERS HAVE STANDING ...................................................... 2

III.  COMMON ISSUES OF FACT AND
LAW PREDOMINATE UNDER 23(B)(3) ........................................................ 5

    A.  Defendants Overstate Differences in the Representations
Made About Download Insurance and the Availability
of Alternatives ........................................................................................ 5

        1.  Class Members Were All Exposed to the Same Omissions ............ 5

        2.  Differences in the Availability of Free
Alternatives Do Not Defeat Certification ...................................... 8

    B.  Concealing the Existence of Alternatives to
Download Insurance, and the Ability to Buy it Later,
Were Material Omissions Establishing Class-Wide
Reliance and a Causal Nexus ................................................................. 10

    C.  Damages Can be Proven on a Class-Wide Basis .................................... 11

        1.  All Class Members are Entitled to Return of the
Full Amount Paid ........................................................................ 11

        2.  All Class Members were Injured by Overpaying
for Download Insurance ............................................................... 13

    D.  Minnesota and California Law Apply ..................................................... 16

        1.  Defendants' Choice of Law Clauses Are Enforceable ................. 16

        2.  Alternatively, Defendants' Respective Home State
Laws Should Apply ...................................................................... 18

IV.  PLAINTIFFS MEET THE RULE 23(A) REQUIREMENTS ........................... 20

    A.  Khoday's Claims are Typical of Class
Members Who Purchased NDI or EDS .................................................. 20

B.     Plaintiffs and Class Counsel Meet the Adequacy Requirement............... 21

V.     CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Wright*,
    468 U.S. 737 (1984) ................................................................................... 3

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) ................................................................... 21

*Avritt v. Reliastar Life Ins., Co.*,
    615 F.3d 1023 (8th Cir. 2010) ................................................................... 3

*Barton v. RCI, LLC*,
    No. 10-3657, 2011 WL 3022238 (D.N.J. July 22, 2011) ...................... 18

*Bodner v. Oreck Direct, LLC*,
    C06-4756, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ............................. 21, 22

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ..................................................................... 2

*Buetow v. A.L.S. Enters., Inc.*,
    259 F.R.D. 187 (D. Minn. 2009) ............................................................ 12

*Butto v. Collecto Inc.*,
    290 F.R.D. 372 (E.D.N.Y. 2013) ........................................................... 10

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ........................................................... 21

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*,
    281 F.R.D. 347 (D. Minn. 2012) ............................................................ 11

*Clothesrigger, Inc. v. GTE Corp.*,
    236 Cal. Rptr 605 (Cal. Ct. App. 1987) ................................................. 20

*Coady v. Cross Country Bank, Inc.*,
    729 N.W. 2d 732 (Wis. Ct. App. 2007) ................................................. 17

*Craft v. Philip Morris Co., Inc.*,
    51 Cause No. 002-00406A, (Mo. Cir. Ct. Sept. 13, 2004) ................ 14, 15

*Cvent, Inc. v. Eventbrite, Inc.*,
    739 F. Supp. 2d 927 (E.D. Va. 2010) .................................................... 17

*DeBoer v. Mellon Mortg. Co.,*
    64 F.3d 1171 (8th Cir. 1995) ........................................................ 21

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006)............................................................ 3

*Edwards v. First Am. Corp.,*
    289 F.R.D. 296 (C.D. Cal. 2012) ................................................. 22

*Gradisher v. Check Enforcement Unit, Inc.,*
    203 F.R.D. 271 (W.D. Mich. 2001) .............................................. 10

*Group Health Plan, Inc., v. Philip Morris, Inc.,*
    621 N.W.2d 2 (Minn. 2001)........................................................... 11

*Halvorson v. Auto-Owners Ins. Co.,*
    718 F.3d 773 (8th Cir. 2013) ..................................................... 4, 5

*Harris v. D. Scott Carruthers & Assoc.,*
    270 F.R.D. 446 (D. Neb. 2010)..................................................... 13

*Hines v. Overstock.com, Inc.,*
    668 F. Supp. 2d 362 (E.D.N.Y. 2009) ......................................... 17

*In re Activated Carbon-Based Clothing Mktg & Sales Practices Litig.,*
    No. 09-md-2059, 2010 WL 3893807 (D. Minn. Sept. 29, 2010) ........... 4

*In re Health Risk Mgmt., Inc.,*
    319 B.R. 181 (Bankr. D. Minn. 2005) ......................................... 12

*In re St. Jude Med. Inc.,*
    2006 WL 2943154 (D. Minn. Oct. 13, 2006) .................... 18, 19, 20

*In Re St. Jude Med., Inc.,*
    522 F.3d 836 (8th Cir. 2008) ......................................................... 7

*In re Steroid Hormone Prod. Cases,*
    104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010).................................. 11

*Kennedy v. ITV Direct, Inc.,*
    No. 08-6244, 2009 WL 1272098 (D. Minn. May 4, 2009)............ 16, 17

*Kohen v. Pacific Inv. Mgmt. Co. LLC,*
    571 F. 3d 672 (7th Cir. 2009) ........................................................ 3

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (Cal. 2003)......................................................... 11

*Lewis v. Citizens Agency of Madelia, Inc.*,
    235 N.W.2d 831 (Minn. 1975)........................................................ 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................... 2

*Macarz v. Transworld Sys., Inc.*,
    193 F.R.D. 46 (D. Conn. 2000)...................................................... 13

*Marcus v. BMW of N.A., LLC*,
    687 F.3d 583 (3d Cir. 2012).......................................................... 21

*Mayo USB Real Estate Sec., Inc.*,
    No. 08-00568, 2012 WL 4361571 (W. D. Mo. Sept. 21, 2012) ........... 12

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ......................................................... 7

*McKell v. Wash. Mut., Inc.*,
    49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ...................................... 6

*Microsoft Corp. v. Motorola, Inc.*,
    904 F. Supp. 2d 1109 (W. D. Wash. 2012)....................................... 15

*Miller v. Redwood Toxicology Lab., Inc.*,
    688 F.3d 928 (8th Cir. 2012) ........................................................ 4

*Millet v. Truelink, Inc.*,
    No. 05-599, 2006 WL 2583100 (D. Del. Sept. 7, 2006)..................... 17

*Mooney v. Allianz Life Ins. Co.*,
    244 F.R.D. 531 (D. Minn. 2007)..................................................... 19

*Negrete v. Allianz Life Ins. Co.*,
    287 F.R.D. 590 (C.D. Cal. 2012) ............................................. 14, 15

*Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*,
    604 N.W. 2d 91 (Minn. 2000)........................................................ 20

*Nw. Airlines, Inc. v. Astrea Aviation Servs., Inc.*,
    111 F.3d 1386 (8th Cir. 1997) ....................................................... 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...................................................................... 19

*Pro v. Hertz Equip. Rental Corp.*,
    No. 06-3830, 2008 WL 5218267 (D.N.J. Dec. 11, 2008)................... 18

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
    277 F.R.D. 97 (S.D.N.Y. 2011) ........................................................................ 7

*Saulic v. Symantec Corp.*,
    596 F. Supp. 2d 1323 (C.D. Cal. 2009) ........................................................ 16

*Schlesinger v. Superior Court*,
    B224880, 2010 WL 3398844 (Cal. Ct. App. Aug. 31, 2010) ................... 18

*Stanich v. Travelers Indem. Co.*,
    259 F.R.D. 294 (N.D. Ohio 2009) ................................................................ 22

*Stearns v. TicketMaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ................................................................ 3, 10

*Steward v. Up N. Plastics, Inc.*,
    177 F. Supp. 2d 953 (D. Minn. 2001) .......................................................... 17

*Superior Edge, Inc. v. Monsanto Co.*,
    12-2672, 2013 WL 4050790 (D. Minn. Aug. 9, 2013) .............................. 16

*TV Interactive Data Corp., v. Sony Corp.*,
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) ...................................................... 15

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
    11-cv-5858, 2013 WL 3200500 (C.D. Cal. June 17, 2013) ........................ 7

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ................................................................ 21

**RULES**

Fed. R. Evid. 1006 ............................................................................................ 10

Rule 23(b)(3) ................................................................................................. 3, 20

## I.       INTRODUCTION

> *"I believe selling NDI is near the border line of being unethical . . ."*
>
> *". . . NDI violates our core Symantec values of Customers and Trust."*
>
> *"I understand the issue of making the number."* [1]

Plaintiffs present a simple case for class treatment: Defendants induced customers to pay for a service that was supposedly *necessary* to re-download their Norton software sixty days after purchase. But the service was unnecessary, and merely a scheme created by Defendants to generate millions in revenue. Defendants hid from customers the fact that they could redownload Norton purchases for free from links Defendants placed on their own websites, or simply purchase the redownload service later if needed.

The simplicity of this scheme readily lends itself to class certification. Defendants uniformly misled and concealed facts about the necessity of download insurance (class-wide conduct) causing all class members to purchase a service they did not need (class-wide injury), and led every class member to overpay for a "service" that essentially had no value (class-wide damages).

Defendants try to complicate this case, but fail. They misconstrue Article III standing, wrongly arguing for a pre-certification trial of each class member's claims.

---

[1]From an email recently produced by Symantec in response to a motion to compel sent by Bill Johnson, Vice President, Consumer Strategy & Emerging Business Development. Declaration of Douglas J. McNamara in Support of Plaintiffs' Reply Memorandum ISO Class Certification ("McNamara Reply Decl.") at Tab 51, Nov. 8, 2010 email at SYMC-KHOD-0245225.

Hereafter, reference to Pls.' Tabs 51-62 refer to the McNamara Reply Decl. References to Pls.' Tabs 1-50 refer to the exhibits attached to the Declaration of Douglas J. McNamara ISO Plaintiffs' Motion for Class Cert., ECF Nos. 183, 185.

They exaggerate irrelevant variations in the representations about download insurance, disregarding the uniformity of the material omissions. They nitpick the availability of free trialware, downplaying its appearance on their own websites and its use by their own customer service representatives. They simply ignore that they concealed from customers that download insurance could be bought later if ever needed. They seek to avoid application of their own choice of law provisions. They also manufacture baseless arguments about the typicality and adequacy of the class representatives.

There are no individual inquiries that could require the multitude of "mini-trials" in the fictional lawsuit Defendants imagine. Instead, one trial before one jury based upon common proof either will, or will not, establish Defendants' liability and damages to every class member. This case is precisely why class actions exist, to compensate persons with small claims who were victimized in exactly the same way. Plaintiffs' motion for class certification should be granted in its entirety.

## II.   ALL CLASS MEMBERS HAVE STANDING

Defendants wrongly equate the need to show a "traceable injury" with a need to show that each class member can prove causation, i.e., succeed on the merits of the cause of action. Digital River, Inc.'s Class Cert. Opp. ("DR-Opp.") at 11-17 (ECF No. 214); Symantec Corp.'s Class Cert. Opp. ("Sym-Opp."), at 22-25 (ECF No. 216). Article III standing "requires a showing of 'injury in fact' to the plaintiff that is 'fairly traceable to the challenged action of the defendant,' and 'likely [to] be redressed by a favorable decision.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[T]he question of standing

is whether the litigant is entitled to have the court decide the merits of the dispute. . .," not prove success on the merits. *Allen v. Wright*, 468 U.S. 737, 750-51 (1984) (quotations omitted). Requiring proof of all class members' claims at certification would "put[] the cart before the horse" and "vitiate the economies of class action procedure" because "trial would precede the certification." *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F. 3d 672, 676 (7th Cir. 2009).

Here, all class members have Article III standing because each purchased download insurance. *Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) (Article III standing met when "[e]ach alleged class member was relieved of money in the transactions." More "particularized proof of . . . causation" not required.). Whether causation can be proved on a class-wide basis is a consideration of Rule 23(b)(3), not Article III.

Defendants misconstrue the applicable Eighth Circuit decisions. In *Avritt v. Reliastar Life Ins*., *Co.*, 615 F.3d 1023 (8th Cir. 2010), the court followed *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006), which noted that a class must be "defined in such a way that anyone within it would have standing." *Avritt*, 615 F.3d at 1034. *Denny* held that the "injury-in-fact" required for standing must be "distinct and palpable" but "need not be capable of sustaining a valid cause of action under applicable tort law." *Denney,* 443 F.3d at 264. The *Avritt* court examined California's UCL, which prior to statutory amendment did not require a plaintiff to have suffered any injury; the court concluded that if the amended statute permitted that, the class would fail under Article III. 615 F.3d at 1034. The *Avritt* court did not equate statutory standing (which

3

requires proof of causation) with the traceable injury requirement for Article III standing. Just last year, the Eight Circuit admonished that courts should be "careful not to conflate the two." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012).[2]

*Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773 (8th Cir. 2013) (DR-Opp. at 15-16; Sym-Opp. at 23) is also inapposite. It concerned allegations that an insurance company had a policy of underpaying medical claims at less than the "usual and customary" rate. 718 F.3d at 775. The court denied certification because many class members' health care providers accepted the lower reimbursement as payment in full, and the class members suffered *no injury*. *Id*. at 779. Here, all class members paid and may therefore claim an injury. That Plaintiffs can prove via a class action Defendants' liability for that injury is properly addressed below.

---

[2]Digital River ("DR") repeatedly cites to an unpublished decision that misread *Avritt* as requiring proof of reliance for each class member to establish Article III standing. *In re Activated Carbon-Based Clothing Mktg & Sales Practices Litig.*, No. 09-md-2059, 2010 WL 3893807, at *2 (D. Minn. Sept. 29, 2010). This conflates Article III standing with succeeding on the merits, which was specifically rejected by *Miller*. DR's assertion that customers valuing EDS were not injured, DR-Opp. at 14, ignores that such a customer can still be defrauded if he overpaid in light of free alternatives. *See infra* Section III(C)(2). Plus, DR's purported evidence for a customer valuing EDS, DR-Opp. Ex. 25, is a 2010 focus group where participants were not told of free re-downloading options, and whose collective opinion was that re-downloading should be free. *See* Pls.' Tab 52 at SYMC-KHOD-0003866-3868.

## III.  COMMON ISSUES OF FACT AND LAW PREDOMINATE UNDER 23(B)(3)

### A.  Defendants Overstate Differences in the Representations Made About Download Insurance and the Availability of Alternatives

Defendants claim individual inquiries are needed because of differences in representations made to the class and the availability of free alternatives. DR-Opp. at 19-25; Sym-Opp. at 25-33. These alleged differences lack both evidentiary support and legal significance.

#### 1.  Class Members Were All Exposed to the Same Omissions

This is fundamentally an omissions case. It is undisputed that Defendants did not disclose to customers at the point of sale that they offered free downloads on their own website, that trialware was widely available elsewhere, and that download insurance could be purchased at the same price later, only if needed.

Correcting their misleading affirmative representations was only *one* of the reasons Defendants' had a duty to disclose. *See* Mem. & Op. on Defs.' Mot. to Dismiss at 14, 22-24 (March 12, 2012) (ECF No. 78). The duty to disclose also arose from two other sources: that the omission could affect consumers' conduct, and the Defendants "special knowledge." *Id*. Nevertheless, Defendants focus only on the affirmative representations, and even there, misstate the facts.

Defendants argue that a class-wide inference of reliance cannot be established here because customers received varying information about download insurance. *See, e.g.*, Sym-Opp. at 25-29. The variations are immaterial. Defendants agree there were only three pop-up descriptors for EDS and NDI during the entire class period. Decl. of Patrick

5

Gibbs in Opp. to Mot. for Class Cert. ("Gibbs Decl.") at Ex. 28 (ECF No. 217). Each descriptor informed the customer that download insurance needed to be purchased to re-download the product after 60 days. Pls.' Tab 1 at 97:16-101:19, 199:25-203:1. While Defendants allege the language changed, it did not vary on this material point. Regardless of whether the customer clicked on the descriptor, she at least saw the names "Extended Download Service" or "Norton Download Insurance" in her cart before finalizing the sale. Those names convey that the service "extends" the time to download or "insures" the ability to download. These affirmative representations, made to all consumers, create a duty to disclose the omitted material facts. *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 239-40 (Cal. Ct. App. 2006).

Defendants speculate that customers could have heard different information about download insurance from other sources. DR points to call center employees, DR-Opp. at 9, but its own 30(b)(6) witnesses conceded that DR's customer representatives did not contradict the language in the written descriptors. ECF No. 183; Pls.' Tab 1 at 223:22-224:8; Tab 11 at 148:23-150:6. DR points to Norton forum posts disparaging download insurance, but then cites two customers who *rejected* buying download insurance, and subsequently asked the forum if they made the right choice. DR-Opp. at 22, DR Ex. 29. DR also cites a 2010 blog highly critical of EDS, *id.* at 14, citing DR Ex. 26, but offers no evidence anyone read it or thereafter purchased Defendants' unnecessary service. Symantec hypothesizes that customers may have visited its customer support site, saw re-downloading links, and somehow concluded that download insurance was unnecessary, all *before* buying the software. Sym-Opp. at 26. Defendants' "sheer conjecture that class

6

members 'must have' discovered [the omissions] is insufficient to defeat Plaintiffs' showing of predominance when there is no admissible evidence to support Defendants' assertions." *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.,* 277 F.R.D. 97, 118-19 (S.D.N.Y. 2011); *see also Vaccarino v. Midland Nat'l Life Ins. Co.*, 11-cv-5858, 2013 WL 3200500, at *13 (C.D. Cal. June 17, 2013).[3]

There is no reason to anticipate pre-sale research of download insurance. This is not a transaction involving heart valves, where life-and-death risks are weighed by doctor and patient. *Cf. In Re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008). Nor is it even a significant purchase, like car, where salespersons may tailor a message to the purchaser. *Cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012). This was a $7 purchase for a simple and superfluous service automatically added to the customer's cart. Defendants have failed to show any instance of a class member aware of the alternatives to download insurance who nevertheless bought the service.[4] They have failed to show individual inquiries predominate.

---

[3]Symantec asserts that because not every customer clicked on the "what's this" link, Plaintiffs cannot show every class member would have been exposed to the omitted information if disclosed. Sym-Opp. at 26. This argument inexplicably presumes that the "what's this" link was the only means by which Symantec could disclose material facts.

[4]DR promises to present evidence refuting individual reliance via sales and transaction records showing "that individual class members rejected or returned EDS on prior occasions, demonstrating they understood EDS was optional and knew they could return it." DR-Opp. at 23. Whether EDS was optional or could be returned is not relevant here.

2.      *Differences in the Availability of Free Alternatives Do Not Defeat
        Certification*

From November 2007 onward, Symantec grouped free download links to Norton

Products onto one customer service web page to permit customers to redownload their

products. Because this was done to "reduce the costs of customer service calls" from

customers seeking to redownload, Sym-Opp. at 14, Symantec made the free download

process easy by following three simple steps.[5] Note the following example:[6]

---

[5]The convenience and ease of the free alternative is confirmed by Symantec's own
decision in January 2008 to stop selling EDS post-purchase and instead instructing
customer service representatives to "assist [the] customer to download trialware (2007
and above), and activate the product using the product key from their original order." Pls.
Tab 53 at SYMC-SUTH0005.

Furthermore, although Defendants suggest that download links might not have been
available for all products, they do not identify a single such product. Plaintiffs have
prepared a list of all products appearing on the free download support pages. *See*
McNamara Reply Decl. at ¶ 2.

[6] *See* Pls.' Tab 12 at 3.

8



Prior to November 2007, trialware was available from a variety of websites owned by Defendants and others. Pls.' Tab 54 at 48:20-49:23. Defendants vaguely state that only "certain" links could be found on their sites. Sym-Opp. at 14, Gibbs Decl. Ex. 28. First, Gibbs Ex. 28 is inadmissible, lacking any sources for its assertions, nor even providing an author beyond "Symantec." Fed. R. Evid. 1006. Moreover, the trialware was sufficiently available that DR believed its existence threatened its EDS revenues. Pls.' Tab 25. In any event, trialware availability is a fact perfectly suited for class resolution: If the jury finds that trialware was not reliably available until November 2007 to justify Defendants' disclosure, they may limit the Defendants' liability accordingly.

### B. Concealing the Existence of Alternatives to Download Insurance, and the Ability to Buy it Later, Were Material Omissions Establishing Class-Wide Reliance and a Causal Nexus

None of the statutes at issue in this case require a showing of individual reliance by each class member. Under the UCL, "it is necessary only to show that members of the public are likely to be deceived." *Stearns*, 655 F.3d at 1020 (quoting *In re Tobacco II Cases*, 207 P.3d 20, 29-30 (Cal. 2009)). The CLRA requires causation, which "may be established by materiality." *Id*. at 1022.[7] The MCFA requires that there "is a causal nexus

---

[7]Plaintiffs agree that the CLRA only applies to consumer claims. Sym-Opp. at 30. Plaintiffs propose limiting the class definition to, "for CLRA claims, purchased EDS or NDI for personal, family, or household purposes." The identification of consumer transactions can easily be handled in the claims process. *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 277 (W.D. Mich. 2001) (whether a purchase was for home or business is a "straightforward" inquiry that can be obtained from class members); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) ("The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt.").

between the plaintiff's damages and the defendant's wrongful conduct." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 356 (D. Minn. 2012); *Group Health Plan, Inc., v. Philip Morris, Inc.*, 621 N.W.2d 2, 14 (Minn. 2001).

Here, the existence of materiality and causal nexus are established by Plaintiffs' expert, who determined that consumers placed far more value on *whether* they could redownload than the *ease* of redownloading, and attributed little value to the "convenience" of having their product key automatically input during the download process. Pls.' Tab 55; Pls.' Tab 56 at 103:1-103:9. Materiality and causal nexus are also established through the common sense inference that a reasonable person would want to know of free alternatives and would not purchase a service he would likely never need if he were told he could wait and purchase the service only if and when he needed it. *Farmington Hills*, 281 F.R.D. at 356 (relying on common sense inferences).

### C.     Damages Can Be Proven on a Class-Wide basis

#### 1.     *All Class Members are Entitled to Return of the Full Amount Paid*

Under the UCL, the class is entitled to restitution. "[A]n order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken. . .'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (Cal. 2003) (quotation omitted). Under the CLRA, the class may recover under any theory of damages, including restitution. *In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 337

(Cal. Ct. App. 2010). Under these claims, Defendants must provide a full refund of the amount obtained through their fraud.

The proper measure of damages under Minnesota law for the sale of this kind of product is the return of all amounts paid. *Lewis v. Citizens Agency of Madelia, Inc.*, 235 N.W.2d 831, 835 (Minn. 1975) (normal measure for fraud in the sale of annuity would be return of premium); *In re Health Risk Mgmt., Inc*., 319 B.R. 181, 192 (Bankr. D. Minn. 2005) (restitution of amounts paid is remedy for agreement procured by fraud). A full refund is particularly appropriate here because download insurance does not have any intrinsic value beyond the ability to redownload the software, for which there was a free alternative. *Cf Buetow v. A.L.S. Enters., Inc.*, 259 F.R.D. 187, 191 (D. Minn. 2009) (clothing has independent value even absent "odor-elimination").

At a minimum, class members prior to 2008 are entitled to a full refund because they never would have purchased EDS at all had they known they could have simply waited. At most, only a handful of customers "bought it later" and even fewer "needed" EDS because of the trialware alternatives. The only data produced by Defendants on download insurance usage note it was "virtually non-existent." Pls. Tab 57 at DR-0321192. From 2003-2005, *only 294 out of 15,684,245 downloads (0.002%)* occurred after the first two months, the only time EDS would have been necessary. *Id*. at DR-0321194. In addition to showing that EDS was essentially worthless, this small percentage does not prevent certification. *Mayo USB Real Estate Sec., Inc.*, No. 08-00568, 2012 WL 4361571, at *3-5 (W. D. Mo. Sept. 21, 2012) (finding defendant's

evidence that 6% of loan files did not include impermissible fees insufficient to reject class certification).

DR also claims without explanation that it cannot ascertain whether EDS was part of the initial purchase or purchased later. DR-Opp. at 16, DR Ex. 1 at ¶ 5. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ DR sold Norton products and EDS through electronic purchases, and must have created a record of what purchases were made on what dates for basic accounting purposes, and to support their public financial statements. Customer service records for customers calling to buy EDS post-purchase should also exist. Even if DR failed to produce or retain this data, certification would still be appropriate. *Harris v. D. Scott Carruthers & Assoc*., 270 F.R.D. 446, 451 (D. Neb. 2010) ("This Court will not allow defendants to prevail [on class certification] by virtue of their careless record retention."); *Macarz v. Transworld Sys., Inc*., 193 F.R.D. 46, 57 (D. Conn. 2000) (poor recordkeeping does not defeat certification).

2.   *All Class Members were Injured by Overpaying for Download Insurance*

Defendants' quibbling about what some isolated class members may have been told or known overlooks that their misrepresentations and omissions created a false perception on behalf of virtually every consumer that download insurance was needed to redownload beyond 60 days from purchase. This permitted Defendants to charge *all customers* more for the download insurance than if the true facts had been disclosed.

13

Under these circumstances, it does not matter whether all class members were exposed to the misrepresentations or would have acted differently if aware of the true facts. "If all class members suffered an injury in the form of a price increase that resulted because at least some class members relied on defendant's misrepresentations, then class members' injuries would clearly have resulted 'by reason of' defendant's allegedly fraudulent misrepresentations." *Negrete v. Allianz Life Ins. Co.*, 287 F.R.D. 590, 607 (C.D. Cal. 2012); Pls.' Tab 49, *Craft v. Philip Morris Co., Inc*., 51 Cause No. 002-00406A at 34, Order on Defs.' Mot. For Recon. of Class Cert. (Mo. Cir. Ct. Sept. 13, 2004) (all class members overpaid regardless of individual reliance).

The primary value of download insurance over the free alternatives was that download insurance "allow[ed] a customer to download a key injected version of their product." Pls.' Tab 59 at SYMC-KHOD-0015874. Despite Defendants' unsupported assertions to the contrary, DR-Opp. at 27, free redownloading from Symantec's own customer service website was a demonstrably simple process and otherwise had the same "safety, reliability, guaranteed availability, and convenience" as download insurance. *See supra* at 9; *see also* Pls.' Tab 60 at 127:15-128:2 (goals of free download links include "save time, save money, more efficient, happier customers").

Plaintiffs' expert, Steve Gaskin, found that consumers of computer protection software attributed only minimal value to the convenience of automatic product key injection. Mr. Gaskin quantified this value as ranging from $.05 to $.16. Pls. Tab 55. This

14

means that Defendants could not have sold download insurance from "$4.99 to $16.99" (DR-Opp. at 4) had they disclosed the free alternatives to customers.[8]

Even if some unknown class member theoretically wanted download insurance for "convenience," she was still damaged because, had Defendants disclosed the availability of free alternatives, they would not have been able to command a market price greater than the value of automatic key injection. Thus, each class members' overpayment was caused by Defendants' omissions and can be recovered on a class-wide basis. Pls.' Tab 49, *Craft, supra,* at 34-36; *Negrete,* 287 F.R.D. at 607.

Defendants make several superficial attacks on Mr. Gaskin's conjoint analysis. They claim his results are only "preliminary," and insufficient for class certification purposes. Sym-Opp. at 37; DR-Opp. at 26. However, they fail to acknowledge that, in accordance with their demand to adjust the pretrial schedule, they received his full report and deposed him. Defendants also question whether Mr. Gaskin's report would survive a *Daubert* challenge, Sym-Opp. at 38; DR-Opp. at 26, but neither made one with their class opposition. In any event, criticisms about what factors and attributes Mr. Gaskin tested, or the panel used, DR-Opp. at 28-29, go to weight and not admissibility of his testimony. *TV Interactive Data Corp., v. Sony Corp.*, 929 F. Supp. 2d 1006, 1013-14 (N.D. Cal. 2013); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W. D. Wash. 2012).

---

[8]Mr. Gaskin's analysis coincides with Symantec's own market research showing that consumers thought redownloads should be free. Pls.' Tab 52 at SYMC-KHOD-003885; Pls.' Tab 56 at 237:8-238:1.

### D.   Minnesota and California Law Apply

#### 1.   *Defendants' Choice of Law Clauses Are Enforceable*

Minnesota courts generally enforce contractual choice of law clauses and apply the substantive law agreed to by the parties. *Superior Edge, Inc. v. Monsanto Co*., 12-2672, 2013 WL 4050790, at *7 (D. Minn. Aug. 9, 2013). Both Defendants have adopted broad choice of law provisions that cover all disputes and are not confined to merely interpreting the agreement. Townsend and Digital River agreed to apply Minnesota law to "any and all claims or disputes relating to" EDS. Pls.' Tab 10; Tab 13 at 18. Symantec and both Plaintiffs agreed that "all matters relating to [Plaintiffs'] access to, or use of, this website shall be governed by the laws of the state of California." Pls.' Tab 12. Because this lawsuit "fall[s] within the ambit of the express agreement," the choice of law provisions should be enforced. *Nw. Airlines, Inc. v. Astrea Aviation Servs., Inc*., 111 F.3d 1386, 1392 (8th Cir. 1997).

DR's claim that its choice-of-law provision does not apply is baseless, particularly given DR has used that exact provision to defeat a consumer class action brought under California law. *Saulic v. Symantec Corp*., 596 F. Supp. 2d 1323, 1329 (C.D. Cal. 2009); *see also* Pls.' Tab 13. DR's case authority is equally inapposite because the cases it cites consider far narrower clauses limited to interpretation of the agreement itself. DR-Opp. at 35-36.

Symantec's attempt to limit the scope of its own clause similarly fails, as the phrase "relating to" is to be broadly read. *Kennedy v. ITV Direct, Inc*., No. 08-6244, 2009 WL 1272098, at *2 (D. Minn. May 4, 2009). Symantec's products are presented,

16

described, and purchased from Symantec's website and URLs owned by Symantec. Pls.' Tab 2 at 23, § D.5; Tab 12 at 32-37, 43-51, 57-62, 66-69, 75-77, 82-86, 97-98. A dispute "relating to" products purchased through "using" the website falls squarely within the choice of law clause.[9]

Both Defendants rely on precedents that are intended to *protect consumers* from deleterious choice of law provisions imposed unilaterally by businesses. Symantec cites to a line of cases concerning efforts by the *drafter* of a "browsewrap" agreement to enforce a choice of law clause against *consumers*. Sym-Opp. at 21) (citing, *e.g., Cvent, Inc. v. Eventbrite, Inc*., 739 F. Supp. 2d 927, 937-38 (E.D. Va. 2010)). Those cases preclude enforcing a browsewrap agreement against a party that does not have actual or constructive knowledge of its terms. *Id.*; *see also Hines v. Overstock.com, Inc*., 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009). *As the drafter*, Symantec necessarily had actual knowledge of the terms.

DR also attempts to hide behind anti-waiver laws designed to protect consumers. DR-Opp. at 36. In each case cited by DR, the court invoked the anti-waiver provisions where application of another state law would limit or deprive the consumer of a remedy. *See, e.g., Millet v. Truelink, Inc.*, No. 05-599, 2006 WL 2583100, at \*3-4 (D. Del. Sept. 7, 2006); *Coady v. Cross Country Bank, Inc*., 729 N.W. 2d 732, 738 (Wis. Ct. App.

---

[9]Symantec's observation that Plaintiffs disregarded the venue selection clause in its Legal Notice (Sym-Opp. at 21) is insignificant, as objections to venue based on a forum selection clause can be waived without affecting the contractual choice of law. *See Steward v. Up N. Plastics, Inc.*, 177 F. Supp. 2d 953, 958, n.7 (D. Minn. 2001).

2007). DR has not identified any consumer remedy from any other state that would be unavailable under Minnesota law, and indeed, there are none. *See* Pls.' Tab 61.

Courts have soundly rejected attempts by drafters to selectively enforce their own choice of law provisions. *See, e.g., Barton v. RCI, LLC*, No. 10-3657, 2011 WL 3022238, at *3 (D.N.J. July 22, 2011) (holding as drafter, defendant cannot circumvent own choice of law clause); *Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2008 WL 5218267, *6 (D.N.J. Dec. 11, 2008) (finding class action defendant cannot use law intended to protect consumers "to circumvent the broad choice of law clause in its own form contract"); *Schlesinger v. Superior Court*, B224880, 2010 WL 3398844 (Cal. Ct. App. Aug. 31, 2010) (rejecting Ticketmaster's efforts to repudiate its California choice of law clause). Pursuant to Defendants' choice of law provisions, Minnesota law should apply to Digital River, and California law should apply to Symantec.

        2.    *Alternatively, Defendants' Respective Home State Laws Should Apply*

Even in the absence of Defendants' choice of law provisions, the Court should apply the home-state law of the respective Defendants under the Constitution and Minnesota's choice-of-law rules. *In re St. Jude Med. Inc.*, 2006 WL 2943154 at *3-5 (D. Minn. Oct. 13, 2006). Where there is a conflict with other jurisdictions,[10] due process requires first that the forum state have "significant contacts to the litigation that support

---

[10]This Court has already determined that the MCFA does not conflict with California law, or 31 other state consumer protection laws. *See In re St. Jude*, 2006 WL 2943154 at *5. A comparison of Minnesota and California law to other consumer protection laws shows there would be no harm to consumers for the Court to certify a class covering those states. Pls.' Tab 61.

the forum state's interest in applying its laws." *Id*. at *3. The contacts for applying Minnesota law to DR include: DR is headquartered in Minnesota; the acts underlying each claim (deliberate omissions) occurred in Minnesota; download insurance was developed, marketed, and sold from Minnesota, and copies for EDS purchases were kept on DR's "premises."  Gibbs Decl. Ex. 19. Similarly, the contacts for applying California law to Symantec include: Symantec is headquartered in California; its decisions about marketing and online sales were made there, and much of its Norton Product development occurred there. Pls.' Tab 62 at 16:8-10, 17:1-7, 19:4-6.

The other important due process consideration is "the expectation of the parties." *In re St. Jude Med. Inc.,* 2006 WL 2943154, at *4 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985). Applying each Defendant's home state law fits the expectations of Defendants and class members, given the Defendants' location and their choice of law provisions. Moreover, these were online rather than local transactions, so there is less of an expectation that the consumer's home state law might apply.[11]

No different results follow from the second required analysis – application of Minnesota's Conflict of Law Rules. To resolve a conflict of law, Minnesota courts are to consider five "choice-influencing" factors: 1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of

---

[11]In light of these contacts, DR's dormant Commerce Clause argument (DR-Opp. at 42) should be rejected for the same reasons as in *Mooney v. Allianz Life Ins. Co.,* 244 F.R.D. 531, 535 (D. Minn. 2007).

19

the forum's governmental interest; and 5) application of the better rule of law.[12] *In re St. Jude*, 2006 WL 2943154, at *5. Many of these factors overlap with the due process analysis.

As to the first and second factors, application of Minnesota and California law is predictable to the Defendants, and both states have significant contacts with Plaintiffs' claims, as discussed *supra*. Third, it is simpler for the Court to apply the law of two states than each class member's home state law. *Id.* at *6. Fourth, Minnesota and California have strong interests in policing the conduct of their own corporate citizens. *Id.*; *Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr 605, 615 (Cal. Ct. App. 1987). Moreover, both states have less stringent liability standards than the states for which there are conflicts, Pls.' Tab 61, making it unlikely "that these jurisdictions would have such a strong interest in applying their own laws that they would seek to prevent an action that would benefit their own citizens." *St. Jude*, 2006 WL 2943154, at *6.

## IV.   PLAINTIFFS MEET THE RULE 23(A) REQUIREMENTS[13]

### A.   Khoday's Claims Are Typical of Class Members Who Purchased NDI or EDS

Symantec wrongly contends that Khoday cannot represent a class of EDS purchasers against Symantec because Khoday purchased NDI but not EDS. Sym-Opp. at 18. Under Rule 23(a)(3), typicality is satisfied when other class members "have the same

---

[12]Since Minnesota courts accord no weight to the fifth factor, it is not addressed here. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W. 2d 91, 96 (Minn. 2000).
[13]Numerosity is not disputed, and commonality is addressed in the prior discussion of predominance.

or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quotations omitted). The burden is "fairly easily met" provided the claims are "similar." *Id*; *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995). Here, even Defendants characterized EDS and NDI as identical. Pls.' Tab 15 at DR-0956322; Tab 16 at 136:12-137:9.

Symantec's reliance on *Wiener v. Dannon Co*., 255 F.R.D. 658 (C.D. Cal. 2009) is misplaced. In *Wiener*, typicality failed because the plaintiff had not bought two of the three yogurts at issue, and because Dannon "made different health benefit claims" about the other two yogurts that "target[ed] consumers with different health issues." *Id*. at 666. These differences led to a "substantial divergence in the evidence required to prove the claims." *Id*. Here, Plaintiffs' claims against Symantec for *both EDS and NDI* rely on the same evidence, the same omissions, and the same theory of recovery. *See Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 598-599 (3d Cir. 2012) (finding no typicality problem where class plaintiff leased only one model of BMW but claims as to different models and tires shared common evidence); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377-78 (N.D. Cal. 2010) (distinguishing *Wiener* and finding plaintiffs' claims typical even though plaintiff did not buy every product sold to class members).

### B.      Plaintiffs and Class Counsel Meet the Adequacy Requirement

Both Defendants cite *Bodner v. Oreck Direct, LLC*, C06-4756, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) to challenge the adequacy of Plaintiffs or their counsel. Sym-Opp. at 40; DR-Opp. at 32. *Bodner* is neither persuasive nor relevant. *Bodner* involved a completely uninformed and uninvolved plaintiff, an abortive filing by counsel of a

21

similar case in another district, and a long history of improper conduct by counsel in class litigation. *Id.* at *2-3. Here, there is no allegation of unethical conduct by counsel, and the Plaintiffs are engaged and fully participating in the case. *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 303 (C.D. Cal. 2012) (*Bodner* inapplicable absent solicitation through "coercive tactics" or "false and misleading representations"); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 316 n.18 (N.D. Ohio 2009) (*Bodner* "is non-binding and represents the minority view on this issue").

DR argues that Townsend is not adequate because she is subject to a statute of limitations defense under Florida law, and has suffered no injury. DR-Opp. at 31-32. However, Florida law does not apply. *See infra* Section III(D). Moreover, just like the class members she seeks to represent, Townsend was misled and suffered injury because she purchased EDS not knowing that she could wait to buy EDS only if she needed it, and overpaid for an essentially worthless service. The fact that Townsend did not *always* purchase EDS (because she could not afford it) or knew she could remove EDS from the shopping cart, does not mean she was not misled as to its value or necessity: it just means that Defendants were not successful in taking her money every time they tried.[14]

## V.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' class certification motion**.**

---

[14]Nor is it significant that Ms. Townsend had her recollection refreshed concerning transactions that occurred 7 years ago. DR-Opp. at 29.

Dated:  October 4, 2013                Respectfully Submitted,

                                       By:  /s/  Karen H. Riebel
                                       Karen Hanson Riebel, #219770
                                       Kate M. Baxter-Kauf, #392037
                                       LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                       100 Washington Avenue South
                                       Suite 2200
                                       Minneapolis, MN  55401
                                       Telephone: 612-596-4097
                                       Facsimile:  612-339-0981
                                       khriebel@locklaw.com
                                       kmbaxter-kauf@locklaw.com

                                       Andrew N. Friedman
                                       Douglas J. McNamara
                                       Mary J. Bortscheller
                                       COHEN  MILSTEIN  SELLERS  &  TOLL
                                       PLLC
                                       1100 New York Avenue, N.W.
                                       Suite 500, West Tower
                                       Washington, DC  20005
                                       Telephone: (202) 408-4600
                                       Facsimile:  (202) 408-4699
                                       afriedman@cohenmilstein.com
                                       dmcnamara@cohenmilstein.com
                                       mbortscheller@cohenmilstein.com

                                       Richard Wentz
                                       Jean Wentz
                                       THE WENTZ LAW FIRM
                                       2955 East Hillcrest Drive
                                       Suite 123
                                       Thousand Oaks, CA  91362
                                       Telephone: (805) 374-0060
                                       Facsimile:  (888) 855-8124
                                       rick.wentz@gmail.com
                                       jean.wentz@gmail.com

Lee S. Shalov
McLaughlin & Stern LLP
260 Madison Ave.
New York, NY  10016
Telephone:  (516) 278-4928
Facsimile:  (212) 448-0066
lshalov@mclaughlinstern.com

Attorneys for Plaintiffs Devi Khoday and
Danise Townsend