# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DEVI KHODAY and DANISE TOWNSEND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SYMANTEC CORP., and DIGITAL RIVER, INC.,<br><br>Defendants. | Civil Action No.  11-CV-00180 (JRT-TNL)<br><br>CLASS ACTION |

## DEFENDANT SYMANTEC CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE PORTIONS OF THE REPORT AND TESTIMONY OF PLAINTIFFS' EXPERT, <u>STEVEN HERSCOVICI</u>

I.  **INTRODUCTION**

Defendant Symantec Corp. ("Symantec") moves to exclude those portions of the Expert Report ("Report")[1] and testimony of Plaintiffs' damages expert, Steven Herscovici, that relate to Norton Download Insurance ("NDI").  In short, Mr. Herscovici's "opinions" concerning NDI-related damages will not be of any assistance to the trier of fact, are not based on any specialized knowledge or expertise, and pose a high risk of misleading and confusing the jury.

In truth, Herscovici's "opinions" regarding NDI-related damages are not opinions at all.  Instead, they are simple mathematical calculations that jurors could easily perform for themselves.  Indeed, Herscovici's calculations amount to nothing more than addition and multiplication based on a single spreadsheet produced by Symantec in discovery, which shows the dollar amounts and unit numbers of NDI sales from December 2009 to March 2012.  To calculate something he calls "Refund Damages", Herscovici simply added up ten sales figures reported on the Symantec spreadsheet.  To calculate something he calls "Convenience Damages", Herscovici calculated an average sales price for NDI for each period, subtracted $0.16 from the average sales price (using a "convenience" value calculated by plaintiffs' other expert, Steven Gaskin), and then multiplied that number by the number of units sold reported on the Symantec spreadsheet.  These simple mathematical calculations are not appropriate for expert testimony under Federal Rule of Evidence 702.  They are not beyond the ken of an average juror – indeed, they could be performed by any adult with a junior high school education – and they do not draw on

---

[1] Herscovici's Report is attached hereto as Exhibit 1.

any specialized knowledge or expertise. For that reason, courts have repeatedly excluded testimony like this because it fails the most basic test for admission of expert testimony – helpfulness to the trier of fact.

Indeed, courts have also recognized the risk of prejudice and confusion that would result from admitting testimony like this. By cloaking Herscovici's damage estimates with the "expert" label, there is a risk that the trier of fact will be misled into thinking that Herscovici is offering more than simple calculations. Given the assumptions on which Herscovici relies in reaching his "opinions", for example, the jury may be misled into thinking that Herscovici is offering an opinion that class members actually suffered harm as a result of Symantec's conduct, or that the measure of damages suggested by Plaintiffs is in fact the appropriate measure of damages in this case. In light of the "aura of authority experts often exude, which can lead juries to give more weight to their testimony", any such assumptions on the part of the trier of fact would be extremely prejudicial to Symantec.

Accordingly, the Court should exercise its mandatory "gatekeeping" function and find that the portions of Herscovici's Report and testimony related to NDI are not admissible under Federal Rules of Evidence 702, 403, and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993).

## II. HERSCOVICI'S REPORT

Plaintiffs retained Herscovici to "estimate the damages, if any, suffered by the Plaintiff class associated with their purchase of Extended Download Insurance ("EDS") or Norton Download Insurance ("NDI")". Report at 1. With respect to NDI, Herscovici

3

offers two alternative calculations: (1) one under a "Refund Damages" theory, which Herscovici defines as a refund of the full purchase price for NDI; and (2) one under a "Convenience Damages" theory, which Herscovici defines as the purchase price minus the value of the "convenience" of having the product key automatically injected during the download process. Report at 5. In order to calculate these amounts, Herscovici relied entirely on a single document produced by Symantec: a spreadsheet that reports, among other things, the U.S. revenue and units for NDI sales from December 2009 through March 2012. Report at 2-3 (citing SYMC-KHOD-0208414).[2] The spreadsheet breaks out revenue and units for NDI sales by financial quarter. Ex. 2.

In his Report, Herscovici presents a chart labeled as Exhibit 2, which provides a summary of the calculation Herscovici performed in reaching his Refund Damage estimate for NDI. Report at 5; December 3, 2013 Deposition of Steven Herscovici ("Herscovici Dep.") (attached hereto as Exhibit 3) at 106:12-15. Herscovici's chart lists the total amount of revenue for U.S. purchases of NDI by year (or by specific quarters, where full year sales information did not exist). Report at 5. In order to enter the U.S. revenue amount of NDI purchases for any given year, Herscovici simply added up the revenue amounts reported on Symantec's spreadsheet for each of the four quarters of that year. Herscovici Dep. at 107:18-108:3.

For example, the U.S. revenue amount of NDI purchases in the fourth quarter of 2009 is listed on Symantec's spreadsheet as $1,623,759. Ex. 2 at 4. The U.S. revenue amount of NDI purchases in the fourth quarter of 2009 is listed on Herscovici's chart as

---

[2] SYMC-KHOD-0208414 is attached hereto as Exhibit 2.

4

$1,623.8 thousand. Report at 5. In other words, Herscovici simply entered the fourth quarter 2009 data from Symantec's spreadsheet into his own chart. Likewise, the U.S. revenue amounts for NDI purchases in the first through fourth quarters of 2010 are listed on Symantec's spreadsheet as $3,355,483, $2,847,505, $2,968,076 and $2,964,316, respectively. Ex. 2 at 4. Added together, those four numbers total $12,135,380. The U.S. revenue amount for NDI purchases in the full year 2010 is listed on Herscovici's chart as $12,135.4 thousand. Report at 5. Again, Herscovici simply added, and entered, the 2010 data from Symantec's spreadsheet into his own chart. The same is true for the remaining periods of revenue reflected in Herscovici's chart. *Compare* Ex. 2 at 4 *with* Report at 5. Similarly, Herscovici's chart also lists the total number of NDI Units Sold in the U.S. during the same time periods for which he listed revenue. Report at 5. Once again, these numbers are identical (once simple addition is applied) to the total number of NDI units listed on Symantec's spreadsheet by quarter. See Ex. 2 at 4-5.

In order to calculate Convenience Damages, Herscovici started with the same chart he used for Refund Damages. Report at 6; Herscovici Dep. at 108:20-109:12. Using the NDI U.S. revenue and unit sold amounts from his chart, Herscovici calculated the average price of NDI in each respective period (which is simply done by dividing the total revenue amount by total number of units), and then subtracted $0.16 from that average price. Report at 6; Herscovici Dep. at 109:20-110:7. For the $0.16 figure, Herscovici relied on the opinion of Plaintiffs' expert Steven Gaskin, who has opined that consumers placed a value of $0.16 on the automatic key injection feature of NDI. Herscovici Dep. at 47:13-19. Then, simply multiplying the per-unit estimated damages

amount with the total number of units sold, Herscovici calculated his Convenience Damages estimate for NDI.  *Id*.

## III.   ARGUMENT

### A.  Applicable Legal Standards Under Rules 702, 403 and *Daubert*

Under Federal Rule of Evidence 702, a qualified expert witness may provide opinion testimony only if: (a) the expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  *See* Fed. R. Evid. 702.  In applying Rule 702, the district court must act as a "gatekeeper" to ensure that proffered expert opinion is both reliable and relevant.  *See Daubert*, 509 U.S. at 597.  The district court's "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony, including that which relies on "other specialized" knowledge.  *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147, 148 (1999).  The Eight Circuit has emphasized the district court's gatekeeper role in "screening expert testimony" to ensure that the jury is not exposed to expert testimony that fails to satisfy Rule 702.  *Lauzon*, 270 F.3d at 686; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

Under Rule 702, the party proffering the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  *Menz v. New Holland North America, Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007).  The "touchstone of admissibility of expert testimony is whether it will assist or be helpful to the trier of fact."

6

*Youa Vang Lee v. Anderson*, 616 F.3d 803, 808 (8th Cir. 2010). "If the subject matter is within the jury's knowledge or experience… 'the testimony does not then meet the helpfulness criterion of Rule 702.'" *Youa Vang Lee*, 616 F.3d at 809 (citation omitted).

Finally, Federal Rule 403, which bars evidence that is prejudicial, confusing, or misleading, also guides the Court in its gatekeeping function. *Daubert*, 509 U.S. at 595. Indeed, because expert testimony "can be both powerful and quite misleading because of the difficult in evaluating it…the judge in weighing possible prejudice against probative force under Rule 403…exercises more control over experts than over lay witnesses." *Id*; *see also Bastow v. Gen. Motors Corp.*, 844 F.2d 506, 510-11 (8th Cir. 1988) (excluding expert testimony may be necessary where "expert" testimony may "cause juries to surrender their own common sense") (citation omitted); *Mukhtar v. Calif. State Univ. Hayward*, 299 F.3d 1053, 1063-64 (9th Cir. 2002) ("Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony.").

### B. Herscovici's NDI Calculations Are Not Appropriate Expert Testimony

As the Eighth Circuit has stated, in order to be helpful to the factfinder and thus admissible, an expert's testimony must be "beyond the ken of people of ordinary intelligence." *Lafarge*, 2010 WL 3025120, *4 (*citing U.S. v. Davis*, 457 F.3d 817, 824 (8th Cir. 2006)). Under this standard, "[s]imple arithmetical calculations [are] not an appropriate subject for expert testimony under Rule 702" because they do not qualify as "scientific, technical, or other specialized knowledge" and they do not "assist the trier of fact to understand the evidence or to determine a fact in issue." *Shapiro v. Art Leather*,

7

*Inc. (In re Connolly N. Am., LLC)*, 398 B.R. 564, 576 (Bankr. E.D. Mich. 2008) (citation omitted). Simply put, basic mathematical calculations are "within the jury's common knowledge and experience." *See Vigil v. Burlington Northern & Santa Fe Ry.*, 521 F. Supp. 2d 1185, 1205 (D.N.M. 2007). They are not beyond the ken of an average juror – indeed, they could be performed by any adult with a junior high school education – and they do not draw on any specialized knowledge or expertise. For that reason, courts have repeatedly excluded testimony like this because it fails the most basic test for admission of expert testimony – helpfulness to the trier of fact. *See Shapiro*, 398 B.R. at 576; *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 2978289, *3 (D. Conn. Apr. 9, 2010) (excluding plaintiff's proffered expert's testimony on damage calculations because the expert did nothing more than add and multiply certain numbers, and "[t]here is absolutely no reason why the jury cannot do this for itself."); *Vigil* 521 F. Supp. 2d at 1205 (concluding that expert's opinions are inadmissible where expert "acknowledged that he employed only basic math and problem solving skills in rendering his opinions concerning [ ] discrepancies" in records because "[t]he jury can assess the discrepancies using the same types of skills"); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours Inc.*, No. 92C 2379, 1993 WL 387346, *2 (N.D. Ill. Sept. 23, 1993) (expert testimony appropriately excluded where "simple averaging does not rely on [expert's] CPA training or experience" and "is not based on scientific, technical or specialized knowledge, as required by Rule 702"); *Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y. 2000)(testimony consisting of mere calculations properly excluded as unhelpful because such testimony was "not generated based on any specialized

8

knowledge, but rather involved basic calculations.").

In *Israel Travel Advisory Serv., Inc.*, for example, the court rejected the opinions of the expert put forth by plaintiff to testify on the average profit per customer. 1993 WL 387346, at *1. Despite the proffered expert's qualifications as a certified public accountant and years of experience in the preparation and analysis of damage claims, the court held that it was proper to bar his testimony because the "simple averages" he calculated "could be computed by anyone with junior high school mathematics", and his conclusions "dr[e]w nothing from his purported expertise". *Id*. at *2. With this in mind, the court found that the expert's testimony failed under Rule 702:

> [The expert's] testimony fails the second part of the Rule 702 analysis: it will not assist the jury in understanding the evidence. If anything, [the expert's] testimony would add credence to simple calculations. Figuring out the average profit per customer is a basic calculation that the jury could understand from a lay witness with the proper foundation. An expert is not required.

*Id*.

The same is true here with respect to Herscovici's calculations of NDI damage estimates, which are nothing more than simple math. *See supra* at II. Indeed, although Herscovici puts himself forth as an expert in economics who applies his expertise to "complex business problems" (Report at 1), there is nothing "complex" about the work he performed with respect to NDI, and more importantly, no evidence of *any* expert skills – economics, or otherwise – being applied.

To be clear, Herscovici is not opining on whether Plaintiffs or putative class members *actually* suffered damages in this case, or whether Symantec and Digital River,

Inc. are *actually* liable to Plaintiffs or putative class members. Herscovici Dep. at 26:22-24, 37:14-16 (confirming repeatedly that his calculations are based on an "assumption" that there's a finding of liability in this case). Nor is he opining on what the appropriate measures of recovery should be in this case. *Id*. 37:21-24 ("I relied on- - or I was advised by counsel about the measures of damages or measures of recovery that Plaintiffs would be entitled to under the law."). Rather, Herscovici's so-called "opinions" relating to NDI are limited to performing simple arithmetic. *See supra* at II. Indeed, even Herscovici agrees that his damages calculation "boiled down to its essence" is "simple math." Herscovici Dep. at 57:24-58:9, 59:25-5. Because Herscovici's damage estimates for NDI purchases consist of nothing more than simple calculations, they do not meet the requirements of Rule 702, and should be excluded on that basis.[3]

### C. Herscovici's Testimony Will Be Misleading To The Jury And Prejudicial To Symantec

Courts have also recognized the risk of prejudice and confusion that would result from admitting testimony like this. By cloaking Herscovici's damage estimates with the "expert" label, there is a risk that the trier of fact will be misled into thinking that Herscovici is offering more than simple calculations. Given the assumptions on which Herscovici relies in reaching his "opinions," for example, the jury may be misled into

---

[3] To the extent Herscovici is offering calculations of damage estimates that are intended to reflect the present day value of the alleged damages (as opposed to the value of the damages allegedly suffered by plaintiffs at their time of purchase), such calculations suffer from the same fatal flaw as the Refund Damages and Convenience Damages calculations: Herscovici applies nothing but basic math to reach his conclusions. *See* Report at 7-8. In particular, Herscovici applied the Treasury Bill interest rate that he pulled from a public government website to the Refund Damages and Convenience Damages amounts he had already calculated. *Id*.

thinking that Herscovici is offering an opinion that class members actually suffered harm as a result of Symantec's conduct, or that the measure of damages suggested by Plaintiffs is in fact the appropriate measure of damages in this case.  As the United States District Court of Minnesota recently recognized, "[i]t is for '[t]he jury . . . to draw reasonable inferences from the firsthand data.  When an expert witness is called upon to draw those inferences, several concerns are raised. . . . [A] certain patina attaches to an expert's testimony unlike any other witness; this is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve.'" *Somnis v. Country Mut. Ins. Co.*, 840 F. Supp. 2d 1166, 1173 (D. Minn. 2012) (*citing United States v. Hines*, 55 F. Supp. 2d 62, 64 (D. Mass. 1999)).  That is precisely the concern here, where the trier of fact is more than capable of performing the same calculations and drawing the same inferences regarding damages estimates as Herscovici.

In *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 2978289 (D. Conn. Apr. 9, 2010), for example, the court excluded plaintiff's proffered expert's testimony on damage calculations because, in reaching his opinions, the expert did nothing more than add and multiply certain numbers, and "[t]here is absolutely no reason why the jury cannot do this for itself." *Id*. at *4.  Indeed, the court went on to note that the expert – in simply adding up numbers given to him by plaintiff's counsel – was not asked to do anything that "a jury of laypeople could not do equally well." *Id*. at *5.  With this in mind, the court recognized that because the jury could make the same calculations on its own, "there is a danger of prejudice that could result from the jury being misled into thinking that [the expert's] testimony reflects more than these simple calculations".

11

*Id*. at *4-5.  The court went on to note:

> Even though [the expert] was asked to perform, and would presumably testify about, only mundane tasks that the jury could perform for itself, there is nonetheless a real danger in permitting him to testify as an 'expert.' The danger is that the jury could be mislead into thinking that [the expert] actually did do some of the things that he actually did not do — like determine reasonableness of attorneys' fees and costs… Any such assumption by the jury would clearly cause unfair prejudice to the Defendants.

*Id.* at *6.  For this reason, the court held that, even if the expert's testimony would have *some* value, "it would be substantially outweighed by the possibility of either misleading the jury, causing unfair prejudice, or both." *Id*.

The same is true here.  Herscovici's calculations are premised on two key assumptions: (1) that Defendants are liable for the wrongful conduct alleged by Plaintiffs, *i.e.*, that Plaintiffs actually suffered harm as a result of conduct by Defendants that was wrongful; and (2) that Plaintiffs' suggested damage measurements are in fact the appropriate measures of damages in this case.  *See supra* at III.B.  Just as in *Master-Halco*, there is a risk that the jury will be misled into believing that Herscovici is opining on more than just the calculations he performed; instead, the jury may think that Herscovici is actually opining on the assumptions underlying his damage estimates, like whether the plaintiffs actually suffered harm, or whether the damage measurements are appropriate in this case.  Any such assumption on the part of the jury would "clearly cause unfair prejudice" to Symantec (*Master-Halco*, 2010 WL 2978289 at *6), and accordingly, the Court should exercise its gatekeeping function and exclude Herscovici's testimony relating to damage estimates associated with NDI.  *See Somnis v. Country Mut.*

*Ins. Co.*, 840 F. Supp. 2d at 1173.

## IV. CONCLUSION

For the foregoing reasons, Symantec respectfully requests that the Court exclude the portions of Steven Herscovici's Report and testimony that relate to NDI under Federal Rules of Evidence 702, 403, and *Daubert*.

Dated: April 15, 2014

**GASKINS BENNETT BIRRELL SCHUPP, LLP**

s/Sara H. Daggett
Steve Gaskins (#147636)
Sara H. Daggett (#386628)
333 S. Seventh Street, Suite 3000
Minneapolis, MN 55402
612-333-9500
612-333-9579 fax
sgaskins@gaskinsbennett.com
sdaggett@gaskinsbennett.com

**LATHAM & WATKINS LLP**
Patrick E. Gibbs (CA Bar No. 183174)
(admitted *pro hac vice*)
Allison S. Davidson (CA Bar No. 267964)
(admitted *pro hac vice*)
140 Scott Drive
Menlo Park, CA 94025
650-328-4600
650-463-2600 fax
patrick.gibbs@lw.com
allison.davidson@lw.com

*Attorneys for Defendant Symantec Corp.*